Douglas B. NAGLE, Sr., and Theodore M. Nagle, Sr., Executors of the Estate of Edith A. Nagle, Deceased,

v.

UNITED STATES of America, Appellant.

No. 11494.

United States Court of Appeals Third Circuit.

Argued March 24, 1955.

Decided April 15, 1955.

Rehearing Denied May 23, 1955.

C. Moxley Featherston, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., John W. McIlvaine, U. S. Atty., D. Malcolm Anderson, Jr., Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellant.

Conrad A. Pearson, Erie, Pa. (William W. Knox, Erie, Pa., on the brief), for appellees.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and LORD, District Judge.

GOODRICH, Circuit Judge.

This appeal involves the application of the gift and estate tax to a portion of the estate of Edith A. Nagle, deceased. The executors have paid the tax assessed and sue to recover a portion of it. The District Court for the Western District of Pennsylvania gave judgment for the plaintiffs and the United States appeals.

The applicable statute is § 811(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. The particular subsection containing the determining words here is subsection (2) of (d). The relevant language is as follows:

"(2) Transfers on or prior to June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale

for an adequate and full consideration in money or money's worth."

The decedent on May 3, 1918, set up a trust. By the provisions of the trust she retained the right (1) to receive the entire net income so long as she lived; (2) to withdraw from the operation of the trust any or all of the subject matter; and (3) to change the beneficiaries, their shares and the plan of distribution. It is agreed on all sides that if these are the controlling provisions the trust property is all subject to the tax since it comes directly within the terms of the statute.

The events which occasion this controversy took place in 1924. In that year the decedent added to the trust $100,000 par value of New York Central Railroad Company bonds. In doing so she added, after the granting clause, two paragraphs the effect of which on the 1918 agreement is the critical point in our case. The first paragraph we quote in the language of the settlor. She said:

"I. Said bonds shall not be sold or disposed of except as they may mature or be called for payment during the lifetime of this trusteeship, unless or until the donor and all of the beneficiaries under said trust agreement shall in writing request that same be done."

Then in the second paragraph she ratified and confirmed "all and singular the terms and conditions of said [1918] trust agreement, except as herein stated."

On behalf of the taxpayer's estate it is now urged that this limitation on the power to deal with the New York Central bonds took their taxability out from under § 811(d) (2). The reasons given are that the taxpayer lost the power to get back this portion of the trust res, and, after the death of one of the beneficiaries prior to the settlor's death, lost the power to shift distributive shares from one beneficiary to another.

It is argued, with ingenuity, that the use of the word "dispose" in the 1924 supplemental trust agreement is a very broad word. Its use, it is argued, prevents the settlor from getting back those bonds from the trust even had she wanted to, and in spite of the ratification of the general terms of the 1918 trust agreement contained in the 1924 document. The government, on the other hand, takes the position that the reasonable interpretation of this clause is to protect the trustee from surcharge or other unhappy consequences that might result to it from holding the bonds indefinitely.

We must, of course, give effect to what the parties have said in their various writings although we are entitled to look at subsequent conduct by them as some guide as to what they meant by their language. That subsequent conduct shows no thought that the 1924 supplemental agreement restricted the settlor in doing what she thought advisable, no doubt prompted by legal advice, concerning the trust. In 1937 and 1938 there were subsequent additions to the trust deed. In 1938, the situs of the trust was moved from Cleveland, Ohio, to Pittsburgh, Pennsylvania, and provision was made for appraisal by Pennsylvania citizens instead of Ohio citizens. In 1937 new property was added to the trust and a new schedule of distribution of this property upon the death of the settlor was entered into. The significance of these two events upon the question in litigation here is simply that the parties quite evidently did not regard the 1924 agreement as changing the settlor's power of control retained under the 1918 trust settlement.

The 1924 restriction was not very broad in its language. If these bonds were called, or if they matured and money took their place in the fund, there is no expressed limitation upon the settlor which would prevent her from withdrawing the money or changing beneficiaries. We think this fact tends to show the correctness of the government's contention that the clause was for the protection of the trustee. It

also shows that whoever was advising the settlor was not, in our opinion, putting any great limitation on her further power to deal with the subject matter of the trust estate.

Nor do we think the contention sound that after the death of one of the beneficiaries prior to that of the settlor, her power to shift the division among the group ceased. We are cited to decisions dealing with the termination of Pennsylvania trusts. But our question is not the powers of trustees or beneficiaries under Pennsylvania law to terminate a trust. It is the interpretation of a series of documents not too clearly drawn in relation to tax law. Here the settlor provided for successors to the original beneficiaries. If one of the named relatives died either his appointee under a will or his next of kin under the intestate law succeeded to his share as beneficiary of this trust. So there was always a group of beneficiaries even though, at the time of the drawing of the trust instrument, some of them were obviously contingent. We think there was never a time, however, when the settlor in conjunction with these beneficiaries could not have ordered the sale of the bonds had they all agreed to do so. The sale or disposal of the bonds, however, did not terminate the trust. The proceeds, whether cash or any other property, then became subject to the complete power of the settlor to dispose of as she pleased under the terms of the 1918 settlement. This interpretation supports our conclusion that the clause was for the protection of the trustee, and that, therefore, the provisions of § 811(d) are applicable.

In the consideration of our problem here the following decisions of this Court, while not precisely in point, are helpful and should be referred to: Cook v. Commissioner, 1933, 3 Cir., 66 F.2d 995, certiorari denied, 1934, 291 U.S. 660, 54 S.Ct. 377, 78 L.Ed. 1052; In re Tyler's Estate, 1940, 3 Cir., 109 F.2d 421; Union Trust Co. of Pittsburgh v Driscoll, 1943, 3 Cir., 138 F.2d 152,

certiorari denied, 1944, 321 U.S. 764, 64 S.Ct. 521, 88 L.Ed. 1061; Hauptfuhrer's Estate v. Commissioner, 1952, 3 Cir., 195 F.2d 548, certiorari denied, 1952, 344 U.S. 825, 73 S.Ct. 26, 97 L. Ed. 642.

The judgment of the district court will be reversed and the case remanded with directions to order judgment for the defendant.