Elizabeth B. KEATING and The Pennsylvania Company for Banking and Trusts, Executors of the Estate of Edith K. Sands, Appellants,

v.

Joseph F. T. MAYER, Former Acting District Director of Internal Revenue.

No. 11832.

United States Court of Appeals Third Circuit.

Argued April 19, 1956.

Decided Sept. 7, 1956.

Paul W. Bruton, Philadelphia, Pa. (MacCoy, Evans & Lewis, Philadelphia, Pa., on the brief), for appellants.

Helen A. Buckley, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Must the exercise of a general power of appointment, created prior to October 21, 1942, be "effective" in order for the provisions of Section 811(f) of the Inter-

nal Revenue Code of 1939, as amended,[1] to become operative?

That is the critical issue presented by this appeal from the judgment of the District Court for the Eastern District of Pennsylvania that appointive property of a Pennsylvania decedent was includible in her gross estate under Section 811(f) by reason of her "exercise" of her general power of appointment under the terms of the Pennsylvania Wills Act of 1947, P.L. 89, Sec. 14.[2]

The facts are undisputed and they may be summarized as follows:

Edith K. Sands, the decedent, a resident of Pennsylvania, died testate on July 12, 1950. At the time of her death she had a life interest in and a general power of appointment by will over a fund established by the will of her grandfather, also a resident of Pennsylvania, who died in 1894. Under his will her surviving issue were entitled to the principal of the fund in default of an exercise of the power of appointment. Decedent was survived by four sons. Her will comprised only two paragraphs, one appointing executors, and the other providing:

> "1. I leave all my property to my sons who shall survive me, their heirs and assigns forever."

Taxpayers, executors of Mrs. Sands' estate, in computing decedent's gross estate for Federal Estate Tax purposes, did not include in their estate tax return that portion of the trust principal over which she had a general power of appointment. The Commissioner, however, claiming that the decedent's will operated as an exercise of the power of appointment, included this fund in decedent's gross estate and assessed a tax deficiency which taxpayers paid. The taxpayers filed a claim for refund, and no notice of allowance or disallowance having been received, instituted this suit. Both parties, by cross motions, requested judgment on the undisputed facts disclosed by the pleadings and supporting affidavits, and judgment was entered for the Director.

On this appeal the taxpayers' contentions are as follows: (1) the decedent's will did not evidence an intention to exercise her power of appointment; (2) even if the will be construed to evidence such intention it did not constitute an "exercise" under Pennsylvania law and within the Internal Revenue Code; and (3) the Orphans' Court of Philadelphia in its Adjudication of the decedent's estate had stated " * * * a so-called exercise of the power of appointment in favor of the same persons to whom the original testator (donor) had given the remainder is a nullity, since their title to such remainder estate is fully effective by the terms of the will of the testator without any aid of the donee of the power of appointment" and under our decision in Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218, that Adjudication was controlling.

The sum of the Director's position is that under the Pennsylvania Wills Act of 1947 the effect of the decedent's will was to exercise her power of appointment; the Orphans' Court's holding that the exercise was a "nullity" because it appointed the property to the same persons who were entitled to take it in default of appointment was not dispositive with respect to Section 811(f) since the latter merely requires that there be an exercise of the power and there is no requirement that property pass as a result of such exercise.

Taking first the issue as to whether there was an "exercise" of the power of appointment:

The Pennsylvania Wills Act of 1947 provides inter alia:

> "In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

> \*　　\*　　\*　　\*　　\*　　\*

**1.** Sec. 811(f) of the Internal Revenue Code of 1939, 53 Stat. 120 as amended by the Internal Revenue Act of 1942, Sec. 403, c. 619, 56 Stat. 798, 942, and further amended by Sec. 2(a) of the Powers of Appointment Act of 1951, c. 165, 65 Stat. 91, 26 U.S.C.1952 ed. Sec. 811 et seq.

**2.** 20. Purdon's Pennsylvania Statutes Annotated (Perm. ed.) § 180.14.

"Sec. 14. Power of appointment. A general devise of the real estate of the testator * * * shall be construed to include any real estate * * * which he shall have power to appoint * * * and shall operate as an execution of such power. In like manner, a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate * * * which he shall have power to appoint in any manner he shall think proper, and shall operate as an execution of such power."

■ It is clear that the will of the decedent is fully within the terms of the Pennsylvania Wills Act. She had a general power of appointment and she made a general disposition of her property. Since no "contrary intent" appears in her will it must be construed as including the property over which she had a general power of appointment and "as an execution of such power" under the Pennsylvania statute.

We cannot subscribe to the taxpayer's contention that the decedent's will "when read in the light of her grandfather's will creating the power, evidences an intention not to exercise the power." The "contrary intent", under the Pennsylvania Wills Act, must appear in the decedent's will and nowhere else. To hold otherwise, would be in flagrant disregard of the express and unambiguous terms of the statute.

The taxpayer's second contention that even if the decedent's will be construed to evidence an intention to exercise her power of appointment, that it did not constitute an "exercise" under Pennsylvania law is nothing less than a contention that in order for an exercise to become operative under Section 811(f) it must be an "effective" exercise. The taxpayers' contention in this respect is premised on the Orphans' Court's statement that the "so-called exercise of the power of appointment" in this case "is a nullity" because the decedent's children had come into title of the devised property by the terms of their great-grandfather's will (the creator of the power) "without any aid of the donee of the power of appointment."[3] It is plain to see that the Orphans' Court had focused its attention on the passing of title and not on the question as to whether the power of appointment had been exercised. Actually, it is implicit in the Adjudication that there was an exercise, albeit such exercise was deemed an ineffective element in the passing of title.

There was no need for the Orphans' Court to decide the issue as to whether there had been an exercise of the power of appointment by virtue of operation of the Pennsylvania Wills Act because in earlier cases the Court had held in situations where title would pass to remaindermen in default of appointment that even " * * * an attempted *express* exercise of the general power of appointment * * * would be a nullity * * * "[4]

---

3. In its Adjudication dated March 14, 1951, (Estate of William V. Keating, No. 379, April Term, 1895) the Orphans' Court stated, inter alia:

"Edith K. Sands left a will, the dispositive provision of which reads as follows: 'I leave all my property to my sons who shall survive me, their heirs and assigns forever'. She left surviving her four adult sons, James Sands, William F. Sands, Jr., Robert J. Sands and John K. Sands, and no issue of deceased child or children. Under the provisions of the will of William V. Keating these sons, as surviving issue of their mother, take one-third of the principal of the trust should their mother fail to exercise her power of appointment, and therefore a so-called exercise of the power of appointment in favor of the same persons to whom the original testator (donor) had given the remainder is a nullity, since their title to such remainder estate is fully effective by the terms of the will of the testator without any aid of the donee of the power of appointment."

4. Estate of John H. Musser, Orphans' Court, Phila. County, No. 437, April Term, 1913 (unreported), decided March 12, 1943. To the same effect see Estate of T. Wistar Brown, Orphans' Court of Phila. County, No. 1256 of 1941 (unreported), decided July 11, 1941.

as far as the passing of title was concerned.

█ The circumstance that under Pennslyvania law *with respect to the passing of title* an appointment to the same persons who would take as remaindermen in default of appointment is of no effect—"a nullity"—is entirely irrelevant as far as the effective operation of the provisions of Section 811(f) as amended, is concerned.

It is true that prior to the Revenue Act of 1942 there had to be a passing of title pursuant to an exercise of an existing power of appointment in order for the appointive property to be includible in the decedent's estate.[5]

However, the Revenue Act of 1942 drastically changed the prior law. It eliminated as to powers of appointment created after its effective date, October 21, 1942, the requirements, contained in prior acts, of "exercise" and "passing". With respect to powers created prior to the October 21, 1942 date, while it retained the requirement of "exercise" it eliminated that of "passing".

The Powers of Appointment Act of 1951 recast the provisions of the 1942 Act in what was clearly a designed clarification. It specifically set up two chronological classifications—one relating to powers of appointment created after October 21, 1942, and the other to powers created prior to that date. As to powers created after October 21, 1942, it provided that the mere *possession* of a general power of appointment at the time of the decedent's death constituted a basis for inclusion of the appointive property in his gross estate irrespective of the ex-

ercise of the power. As to powers created prior to the October 21, 1942 date, the Act required (1) *possession* and (2) *exercise* of the power. It is with the latter provision that we are here concerned since the taxpayers agree that the statutory law applicable to the issue presented by this appeal is Sec. 811(f) of the 1939 Code, as amended by the Internal Revenue Act of 1942, Sec. 403 and further amended by the Powers of Appointment Act of 1951, Sec. 811(f) (1).[6]

█ That Congress intended, with respect to the powers created prior to October, 1942, to include appointive property upon the exercise of the power irrespective of whether there was a passing of title by virtue of such exercise, is demonstrated by the Committee Reports in connection with the Powers of Appointment Act of 1951.

In S. Rep. No. 382, 82d Cong., 1st Sess., p. 3, 2 U.S. Code Congressional and Administrative Service 1951, pp. 1530, 1532, there appeared the following in reference to the 1951 amendment to Section 811(f) which applies here:

"The former statute taxed property 'passing' under a general power of appointment exercised by the decedent. This sometimes gave rise to litigation where the decedent appointed part or all of the property to persons who would also have taken it under the terms of the original instrument creating the power. The bill eliminates this possibility by taxing all property with respect to which the decedent has 'exercised' a general power of appointment."

---

5. Lewis v. Rothensies, 3 Cir., 1943, 138 F.2d 129; Rothensies v. Fidelity-Philadelphia Trust Co., 3 Cir., 1940, 112 F. 2d 758.

6. Sec. 811(f) (as amended by Sec. 2(a), Powers of Appointment Act of 1951, c. 165, 65 Stat. 91), provides inter alia: "Powers of Appointment.— "(1) Property with respect to which decedent exercises a general power of appointment created on or before October 21, 1942. To the extent of any prop-

erty with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent (1) by will or (2) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under subsection (c) or (d); but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof."

We conclude from the foregoing that when Congress eliminated the requirement of "passing" both in the Revenue Act of 1942 and the Powers of Appointment Act of 1951, but retained in both Acts the requirement of exercise as to powers created prior to October 21, 1942, that it could not possibly have intended that the exercise must be "effective". No other conclusion is possible in view of the elimination of the requirement of "passing" in both statutes. To hold otherwise would be, by judicial legislation, to put back into the statutes referred to that which Congress had eliminated— "passing" or otherwise stated, "effective" exercise.

It may be pointed out parenthetically that even under the 1942 Act the contention that "exercise" means "effective" exercise was specifically rejected in Wilson v. Kraemer, D.C.Conn.1950, 97 F. Supp. 627, affirmed 2 Cir., 1951, 190 F.2d 341, certiorari denied 342 U.S. 859, 72 S.Ct. 85, 96 L.Ed. 646. It was also specifically rejected in Estate of Moran v. Commissioner, 1951, 16 T.C. 814. Both cases held valid Treasury Regulations 105, section 81.24 as amended by T.D. 5239 in 1943 to conform to the Revenue Act of 1942 (1943 C.B. 1081). That Regulation provided inter alia as follows:

" * * * A power to appoint is exercised where the property subject thereto is appointed to the taker in default of appointment regardless of whether or not the appointed interest and the interest in default of appointment are identical, and regardless of whether or not the appointees renounce any right to take under the appointment."

We agree with the District Court's view in the instant case [7] that " * * * Congress must have been * * * aware of the interpretative Treasury Regulation * * * " at the time of passage of the Powers of Appointment Act of 1951.

We further agree with the District Court's statement that "Congress eliminated the requirement of passing and a judicial construction of the amended act which would require that an exercise be effective would nullify the effect of this deliberate legislative action."

Summing up, Congress provided in the amended Act that an exercise "by will" of a power created prior to October 21, 1942, makes the appointive property includible in the decedent's estate. Here by operation of the Pennsylvania Wills Act of 1947 the decedent's will "exercised" the power. That "exercise" is conclusive.

For the reasons stated the judgment of the District Court will be affirmed.

---

7. The District Court's opinion is reported at D.C.E.D.Pa.1955, 136 F.Supp. 286, 290, under the caption Keating v. Mayer.