George H. RUNDLE, as Executor of the Estate of Grace S. Rundle, deceased, Plaintiff,

v.

Russell A. WELCH, District Director of Internal Revenue, Cincinnati District and United States of America, Defendant.

Civ. A. No. 2288.

United States District Court
S. D. Ohio, W. D.
April 15, 1960.

McCulloch, Felger & Fite, Piqua, Ohio, for plaintiff.

Hugh K. Martin, U. S. Atty., Donald H. Hawkins, Asst. U. S. Atty., Dayton, Ohio, for defendant.

WEINMAN, District Judge.

The question for decision here is whether the proceeds of four insurance policies were properly includible in the estate of Grace S. Rundle on her death on October 15, 1952. The executor seeks the assistance of this court to order repayment of estate taxes collected because of the disputed inclusion.

The policies in question were originally in force as insurance on the life of Allen G. Rundle who died on February 18, 1937. In the insurance contracts, he had designated his wife, Grace S. Rundle, as primary beneficiary and two children as contingent beneficiaries. Each policy primarily provided for lump sum payment to the widow after the death of the insured. The insured reserved a continuing right to designate other options during his lifetime. With the death of the insured, the proceeds were payable to his widow as the primary beneficiary.

The dispute centers around the later effect on the estate tax liability of the widow of various options contained in her husband's life insurance contract. On March 11, 1937, the surviving widow exercised the interest option by which the death payment proceeds of the policy were left with the insurer. She di- to her son and her daughter. By this act she required the insurer to make the same final disbursement which had been earlier designated by the insured. The company agreed that it would annually pay interest at 3% to the widow-beneficiary while the deposit continued. She retained the policy-granted right to withdraw the fund at any interest date. Neither right was ever released by the decedent widow.

The executor argued that the various aspects of the widow's authority added up to a general power of appointment. He urged that this power had come into existence at the date of the death of the insured in 1937, and that because the power was never exercised, it ought to be considered to be covered by the exception carved out by Internal Revenue

Code of 1939, § 811(f) (1).[1] From this, the taxpayer concluded that the value of the insurance policies ought not to be included in the beneficiary's estate.

1. *The origin of the decedent's interest in the life insurance contracts*

The resolution of this dispute must recognize the continuous co-existence of two significant elements. First, the decedent had a contractual right to draw down the proceeds of the policies exercisable at least once annually with only a minimal obligation to comply with the formal requirements of the insurer. This factor was coupled with the additional significant fact that the decedent had continuing income rights from the policy and a concomitant right to claim, reject or divert the income at her whim.

An underlying fundamental in the general conceptual scheme of the estate tax pattern imposes an elementary overriding dichotomy. The statute searches out for estate taxation various significant legal factors to determine whether they originated with the decedent and might be therefore includible as taxable reserved powers. Lober v. United States, 1953, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15; State Street Trust Co. v. United States, 1 Cir., 1959, 263 F. 2d 635; Newman v. Com'r, 9 Cir., 1955, 222 F.2d 131; Nagle v. United States, 3 Cir., 1955, 222 F.2d 663. By contra-distinction, the taxing plan may produce an opposite result if the elements arose from persons other than the decedent. Thus a bare life estate created by another is not includible in the estate of a decedent in the absence of additional powers. Estate of Sergeant Price Martin, 1955, 23 T.C. 725 (acq. 1955–2 Cum.Bull. 7); Estate of Selina J. Gray, 1950, 14 T.C. 390 (acq. 1950–2 Cum.Bull. 2); Commissioner of Internal Revenue v. Childs Estate, 3 Cir., 1944, 147 F.2d 368.

The first inquiry must be directed to determine the extent to which the optional mode of settlement was the product of the decedent's own exercise, subdivision and definition of her own vested general property rights in the proceeds of the policies. Alternatively, we must discover whether the rights which existed at the time the widow's death arose originally and directly from her husband's earlier transactions.

The interest of the decedent in the insurance policies as a potential beneficiary of the policy was created by her husband before his death; until then, it was fully contingent and subject to revocation. At his passing, the decedent as the beneficiary acquired an indefeasible vested right to the proceeds of the insurance contract. Katz v. Ohio National Bank, 1934, 127 Ohio St. 531, 191 N.E. 782; Stone v. Stephens, 1951, 155 Ohio St. 595, 99 N.E.2d 766, 25 A.L.R.2d 992. After her interest became absolute, Mrs. Rundle did nothing to strip herself of it. Streeper v. Myers, 1937, 132 Ohio St. 322, 7 N.E.2d 554. Her designation of a lump sum payment to her son and her daughter as successor beneficiaries confirmed her husband's contractual inter vivos direction that the path of devolution would be outside her probate estate. Neff v. Massachusetts Mutual Life Ins. Co., 1952, 158 Ohio St. 45, 107 N.E.2d 100; compare In re Rothenbuecher's Estate, 1945, 76 Ohio App. 425, 64 N.E.2d

1. The significant inclusion statutes applicable here start with the power of appointment factor spelled out by Internal Revenue Code, § 811(f) (1), (26 United States Code, § 811(f) (1), now Internal Revenue Code of 1954, § 2041(a) (1):

"(f) *Powers of Appointment*

(1) *Property with respect to which decedent exercises a general power of appointment created on or before October 21, 1942.* To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is *exercised by the decedent* (1) by will or (2) by a disposition which is of such nature that if it were a *transfer of property owned by the decedent,* such property would be includible in the decedent's gross estate under subsection (c) or (d); but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof." (Emphasis supplied.)

680. Even this could be effectively revoked by taking down the proceeds during her lifetime. Guggenheim v. Rasquin, 1941, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813.

The decedent reserved the right to receive the annual interest and to recapture the principal sum by a simple maneuver to satisfy lenient formal requirements of the insurer's contract. In effect, by rejecting the primary lump sum method prescribed by her husband's designation in the original policy, the decedent actively changed the payment plan to an alternative formula created by her positive choice. Only by direct command could she intercept the payment process and assert the secondary interest option. Furthermore, the death of the insured effectively cut off whatever earlier expectations the contingent beneficiaries might have had. Another positive act of the widow as post mortem owner was necessary to prevent the utter destruction of their contingent expectancies through the insurer's payment to the beneficiary by a conclusive cash settlement. Stanton v. Provident Life & Accident Ins. Co., 1941, 69 Ohio App. 27, 42 N.E.2d 687.

■ At the time of Mr. Rundle's death, Ohio statute permitted the policy proceeds to be left on deposit subject to such obligations to which the beneficiary and the company might agree in writing. Ohio Revised Code, § 3911.14, then known as Ohio General Code, § 9398–1. Legislation permitted the insurer to commingle the funds; and the company was authorized to accept various spendthrift limitations imposed by the beneficiary or the insured. In the face of these mixed factors, it might be disputed whether the obligation of the insurer was in the nature of a trust or whether the company was simply a debtor. Compare Mutual Benefit Life Ins. Co. v. Ellis, 2 Cir., 1942, 125 F.2d 127, 138 A.L.R. 1478, certiorari denied sub nomine Eisen-

lord v. Ellis, 316 U.S. 665, 62 S.Ct. 945, 86 L.Ed. 1741; Scott, Life Insurance Options, 56 Harvard L.Rev. 1147 (1943); Land, Life Insurance Options, 42 Columbia L.Rev. 32 (1942). The precise nature of the relationship between the insurer and the widow after the proceeds were retained is immaterial for this purpose. However the undertaking might be characterized, the thrust of the Federal estate tax reaches either retained interest with equal facility whether it be in trust or otherwise. Internal Revenue Code, § 811(d); Internal Revenue Code, § 811(c); Internal Revenue Code, § 811 (a).[2]

■ For Federal estate tax purposes, where an insured designated payment of the principal of life insurance by a single post mortem settlement but granted alternative right to reject the single payment and permitted the beneficiary an option to elect among other alternatives, the election of the secondary rights were proximately reserved by the act of the beneficiary where she rejected the lump sum mode of settlement primarily created by the insured, where the beneficiary ordered the insurer to retain the lump sum on deposit, where she elected to receive the annual interest payments, and where she chose to retain a continuing right to take down the proceeds of the policy on any annual interest date.

2. *The existence of the right reserved by the decedent*

Since the interest of the decedent was proximately defined by her own act and not merely from the act of her deceased husband, the nature of her continuing rights ought to be examined to determine if they were taxable as reserved powers.

■ The general conceptual scheme of the estate tax statute makes alternatively significant either of two principal sticks from the bundle of retained property rights. One crucial element is the retention of power to receive income

---

2. The general inclusion statute seems broad indeed. Internal Revenue Code, § 811(a). Internal Revenue Code of 1954

§ 2033: *Decedent's interest.* To the extent of the interest therein of the decedent at the time of his death.

from property which originated with the decedent. The other basic factor is retained power to control the ultimate devolution of property by various refinements and applications of substantial legal power.[3] At the minimum the decedent had available continuing contractual authority to take down the proceeds at least once annually for the fourteen years until her death. The policy explicitly gave her the right "at any time any interest payment (came) * * * due * * * (by a simple) surrender of (the policy) * * * to withdraw the amount so retained (by the insurer). * * *" This was a clear case of a retained income right. Internal Revenue Code, § 811(c) (1) (B); Marks v. Higgins, 2 Cir., 1954, 213 F.2d 884; Maria Becklenberg Estate, 1959, 31 T.C. 402 (appealed to 7 Cir., 273 F.2d 297); Robert J. Cuddihy Estate, 1959, 32 T.C. 110.

Furthermore, through the same right, the decedent's power to take down the income could have been exercised so as to later deflect the proceeds of the policy to any beneficiary quite contrary to the wishes of her son and her daughter. The widow's reserved authority amounted to a retained power over the disposition so that their possession or enjoyment could be obtained only by surviving the decedent. Internal Revenue Code, § 811(c) (1) (B). If this were not enough, the decedent's plan of disposition was constantly subject to annual revocation by the decedent. Internal Revenue Code, § 811(d) (1).

This conclusion is firmly based on ample reason; but we are not alone. In parallel cases, against less ingenious arguments, the Tax Court has twice held against the position urged by the taxpayer. Estate of Mabel E. Morton, 1949, 12 T.C. 380; Estate of John J. Tuohy, Jr., 1950, 14 T.C. 245.

3. The estate tax statutes draw alternative controlling estate tax significance from either of two basic retained factors. One is the retention of income: Internal Revenue Code, § 811(c) (1) (B), Internal Revenue Code of 1954, § 2036(a) (1), § 2036(a) (2): the other factor is predicated on various significant retained rights

### 3. The effect of the unexercised power of appointment

The main thrust of this taxpayer's argument proceeds from the special premise that the decedent had an unexercised general power of appointment which originated in 1937. If the power had originated with her husband, it would come under the particular exception which excludes the value of property subject to an unexercised power of appointment created before 1942. Internal Revenue Code, § 811(f) (1).

The code has long defined a general power of appointment as one exercisable "in favor of the decedent, his estate, his creditors, or the creditors of his estate." Internal Revenue Code, § 811(f) (3); see Craven, Powers of Appointment Act of 1951, 65 Harvard L. Rev. 55 (1951) at page 70. The absence of specific nomenclature is not significant in determining whether a general power is present. Regulations § 20.2041–1(b) (1), 26 C.F.R. § 20.2041–1(b) (1). The substantial power of the decedent to control the payment of the proceeds to herself could have easily amounted to a general power of appointment if the reserved powers do not rule out this possibility. Her husband's death originally established the widow as the legal owner of a claim against the insurer with full annual control as the beneficiary of a lump sum payment. Stone v. Stephens, supra. Her broad post mortem authority to alter her husband's plan for primary payment required another choice. The widow's positive rejection of her husband's order for lump sum payment and her active substitution of the interest option prevented the interests of her son and her daughter as the contingent beneficiaries from being obliterated forever by the insurer's payment. By her rejection of the initial plan and choice of

of disposition. Internal Revenue Code, § 811(a), Internal Revenue Code of 1954, § 2033; Internal Revenue Code, § 811(c); Internal Revenue Code of 1954, § 2037; Internal Revenue Code, § 811(d), Internal Revenue Code of 1954, § 2038; and Internal Revenue Code, § 811(e), Internal Revenue Code of 1954, § 2040.

the other income alternative she retained the interest which continued to her death. By her elected mode of settlement her broad right to immediate collection was reduced and limited but was still subject to substantial undoing at her sole option. The sum of these powers easily approximate the power to control economic benefits which the estate tax reaches. Struthers v. Kahn, 8 Cir., 1955, 218 F.2d 810; Lober v. United States, supra; Estate of Sanford v. Commissioner of Internal Revenue, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20.

The non-exercise exception plainly excepted from its scope [Internal Revenue Code, § 811(f) (1)] powers of appointment which were the remnant of reserved property rights of the decedent. These were essentially strings and not powers for tax purposes. Internal Revenue Code, § 811(c) (1) (B); § 811(d) (1); Lowndes & Kramer, Federal Estate & Gift Taxes, New York; Prentice-Hall, (1956); at page 246; Regulations 105 § 81.19, Regulations § 20.2041–2(a). These powers originated with the decedent. The reserved factors are fatal to the argument for the applicability of the contended exception which is not effective in the presence of these strings.[4]

■ Even if the power originated with the decedent's husband, with no

reserved powers originating with the decedent, the statutory exception does not apply if the power has been exercised. The decedent resided in Ohio; the law of her domicile is controlling as to what constitutes the exercise of a power. United States v. Merchants National Bank of Mobile, 5 Cir., 1958, 261 F.2d 570. Her intent to exercise her power can easily be drawn from the circumstances, from considering the contractual right to which it was directed or from the simple fact that her election would be meaningless except as an execution of the power. Arthur v. Odd Fellows Beneficial Ass'n, 1877, 29 Ohio St. 557 (assignment of death benefit); Kiplinger v. Armstrong, 1930, 34 Ohio App. 348, 171 N.E. 245 (exercise of power by will); compare In re Estate of Maxhimer, 1942, 139 Ohio St. 444, 40 N.E.2d 941 (power not exercised by minor donee prior to his death).

The conversion of her husband's lump sum payoff directive into a withdrawable life income was not a superfluous exercise of the power by the beneficiary as to her own income and withdrawal rights; the order of modification adopted a new alternative arrangement. Keating v. Mayer, 3 Cir., 1956, 236 F.2d 478; Wilson v. Kraemer, 2 Cir., 1950, 190 F. 2d 341, certiorari denied 1951, 342 U.S.

---

4. The power of appointment section of the statute particularly excluded transfers by the decedent to take effect at death. Internal Revenue Code, § 811(c) (1) (B), Internal Revenue Code, § 811(d), and Internal Revenue Code, § 2038(a) :

"(c) *Transfers in contemplation of, or taking effect at death.*

"(1) General rule. To the extent of any interest therein of which *the decedent has at any time made a transfer* (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\*        \*        \*        \*        \*

"(B) Under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from the property, or (ii) the right, either alone or in conjunction with any

person, to designate the persons who shall possess or enjoy the property or the income therefrom; (emphasis supplied)

\*        \*        \*        \*        \*

"(d) *Revocable transfers*

"(1) *Transfers after June 22, 1936.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death. \*  \*  \*"

859, 72 S.Ct. 85, 96 L.Ed. 646. The beneficiary's conduct here far exceeded a failure to act especially when we consider the result if she had not effected her rejection and made her election. Her request easily amounted to an exercise. Regulations § 20.2041–1(d).

Reliance upon Brown v. Routzahn, 6 Cir., 1933, 63 F.2d 914, 916, certiorari denied 1933, 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557 is misplaced. A legatee's renunciation of all the benefits of a specific portion of a testamentary legacy there was held not to be a transfer to another taxable as a gift. Compare Hardenbergh v. Commissioner of Internal Revenue, 8 Cir., 1952, 198 F.2d 63, certiorari denied 344 U.S. 836, 73 S.Ct. 45, 97 L.Ed. 650. See also Kay, Renunciations, Disclaimers and Releases, 35 Taxes 767 (1957); Smith, Renunciations and Disclaimers, 96 Trusts & Estates 744 (1957); and Ward, Disclaimers by Doncees, Heirs and Legatees, 16 New York Univ.Institute on Federal Taxation 1037 (1958). Quite the opposite from this case, Brown v. Routzahn was not embarrassed by retained interests in the beneficiary; the renunciation there was absolute and complete as to the property affected. The beneficiaries' retained income rights and broad power to control disposition were incompatible with renunciation; the arrangement here at best had only a faint resemblance to a renunciation. Estate of Mable E. Morton, 1949, 12 T.C. 380.

The fact and legal distinctions between this case and Commissioner of Internal Revenue v. Pierce, 2 Cir., 1944, 146 F.2d 388 are too many and the similarities too tenuous to require us to linger long on its meaning in this connotation. The income and estate tax statutes are not integrated nor are they coterminous. Lockard v. Commissioner of Internal Revenue, 1 Cir., 1948, 166 F.2d 409; Dewind, The Approaching Crisis in Federal Estate and Gift Taxation. 38 Calif. L.Rev. 79 (1950). Even if they were, to paraphrase the elegance of the lovely prose of Judge Learned Hand, it might be arguable that if the insured, the decedent's husband here, during his life had elected to set up the interest option which the widow actually took, the income election would have been created by someone other than the decedent; and the decedent needed to do nothing to accomplish the effect which followed here. 146 F.2d 388 at page 390. Perhaps in that posture, the widow's power of appointment might be said to have been derived from another without exercise so that it might have come under the non-exercise exception to the statute. Internal Revenue Code, § 811(f) (1).

The facts here make this possibility plainly inapplicable. The widow substituted her wish for that of the decedent by exercising the authority granted by his earlier act in creating the power to alter the payoff plan. Even if the common law relation back doctrine applies, so that her election under the power of appointment was deemed the later result of the earlier act of the creator of the power (Cleveland Trust Co. v. McQuade, 1957, 106 Ohio App. 237, 142 N.E.2d 249) it required her affirmative action to upset her husband's first choice. Her command to alter the insured's directive was quite the opposite of the non-exercise example which might have been arguable from Judge Hand's suggestion. The effect of her request was so substantial that it excluded this case from the narrow limits of the non-exercise exception to the statute.

4. *Conclusion*

The plaintiff has included allegations which suggest that an additional expense for attorney's fees in this litigation may be deductible. This factor has not been argued on briefs. It may be that this points up an allowable deduction which should be disposed of in our final judgment. We pass this question for later decision; with this reserved exception judgment will be entered for the defendant.

Findings of Fact.

(1) George H. Rundle is the duly appointed, qualified and acting executor of Grace S. Rundle, deceased, under au-

thority of the Probate Court of Miami County, Ohio.

(2) Russell A. Welch was at the time of the filing of this action, the District Director of Internal Revenue of the Cincinnati District.

(3) Allen G. Rundle, husband of the decedent, Grace S. Rundle, died on February 18, 1937. At the time of his death, he owned four policies of insurance upon his life issued by Northwestern Mutual Life Insurance Company having an aggregate value of $44,314.80. Grace was named a primary beneficiary, and his children, Nancy R. Smith and George H. Rundle were named as contingent beneficiaries.

(4) The Northwestern policies provided that when the proceeds became payable, the beneficiary shall also have the right, with the privilege of revocation and change, to designate a contingent beneficiary if there then be living no contingent beneficiary designated by the insured.

(5) On March 11, 1937, "by request of the beneficiary" endorsed on the policies, Grace S. Rundle requested that settlement of the aggregate proceeds of the four Milwaukee policies shall be made with her in accordance with the provision of Option A * * * with privilege of surrender and withdrawal. It (was) understood and agreed that upon the death of the beneficiary (Grace S. Rundle), settlement with the contingent beneficiaries as designated shall be made in one sume * * *." The proceeds remained continuously with the insurance company with only the income therefrom being paid to Grace S. Rundle until after her death October 15, 1952, whereupon it was paid by the insurance company to the contingent beneficiaries, Nancy R. Smith and George H. Rundle.

(6) Plaintiff paid an estate tax deficiency assessment of $12,230.60 plus interest of $1,651.13 on April 30, 1956, as required by the District Director of Internal Revenue.

(7) This case is properly before this court on a claim for refund and its rejection by the defendant.

8. An additional attorney's fee may have resulted from this litigation. This issue has been passed by both parties subject to resubmission if it be not earlier resolved by agreement.

Conclusions of Law.

In compliance with the requirements of Rule 52 F.R.C.P., 28 U.S.C.A. the court hereby enters its conclusions of law as follows:

(1) This Court has jurisdiction over the subject matter of this Federal tax refund dispute and over both parties.

(2) At the death of Allen G. Rundle, the insured, Grace S. Rundle, the beneficiary, acquired an indefeasible right to the proceeds of the insurance contract. The ownership of Mrs. Rundle in these policies which vested in her at the date of death of her husband was absolute and unconditional; and her direction to the insurer to retain the proceeds, to pay to her the annual interest, and her reservation of the right to surrender the proceeds at her election and her order to the insurer to pay out the corpus in a lump sum after her death were merely subdivisions and definitions of her own absolute property rights which arose at the death of her husband.

(3) The decedent beneficiary did nothing during her lifetime to strip herself of either the income right or the right to take down the proceeds after her interest in the policy vested in her at her husband's death.

(4) The act of Grace S. Rundle in rejecting the plan of lump sum payment set up by her deceased husband during his lifetime, and her act in electing to substitute an alternative choice to leave the proceeds on deposit were acts of dominion which were an exercise of a general power of appointment.

(5) The continuing power of the decedent to take down the proceeds of the policy on any annual interest date was predicated on a transfer of property owned by the decedent as to which the decedent retained the possession, enjoyment and the right to the income from the property for her life and for a period not ascertainable without reference to

her death and which did not in fact end before her death. Internal Revenue Code, § 811(c) (1) (B), 26 U.S.C.A. § 811(c) (1) (B).

(6) The continuing power of the decedent to take down the proceeds of the policy on any annual interest date was predicated on a transfer of property owned by the decedent where the enjoyment was subject at the date of her death to change by her exercise of a power in the decedent alone to alter, amend, revoke or terminate. Internal Revenue Code § 811(d) (1).

(7) The defendant is entitled to judgment as a matter of law subject to the reserved and continuing jurisdiction of this court to later determine whether additional attorney's fees may be deductible against the gross estate.