Harold H. KYNETT, Executor, Estate of
Edna Gallagher Kynett, Deceased,

v.

UNITED STATES of America.

Civ. A. No. 28959.

United States District Court
E. D. Pennsylvania.

Feb. 1, 1962.

Edward S. Weyl and Arthur R. Kane,
Jr., Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Carl
J. Melone, Asst. U. S. Atty., Philadelphia,
Pa., John M. Hammerman, Dept. of Justice, Washington, D. C., for defendant.

LUONGO, District Judge.

This is an action for refund of estate
taxes and is before the court on the motions of both the plaintiff and the defendant for summary judgment upon
these stipulated facts:

On December 31, 1934, Harold H. Kynett, as Settlor, executed an indenture
of trust to himself and Girard Trust
Company as Trustees by which he con-

veyed certain securities in trust, and, at the same time, entered into an agreement of trust with his wife, Edna Gallagher Kynett, and the Girard Trust Company as Trustees by which he made the proceeds of certain policies of insurance on his life subject to that trust. Under each of the trusts income was payable for life to Settlor's wife (hereinafter referred to as Decedent), and upon her death the income was to be payable to the Settlor's daughter, Mary Elizabeth Kynett (hereinafter referred to as Daughter). Upon the death of Daughter, the principal of the trusts was to be payable to such persons as Daughter, by her last will and testament, might appoint. In default of the exercise of the power of appointment by Daughter, the corpus of the trusts was to be payable to the issue of Daughter, per stirpes, upon the attainment by such issue of the age of twenty-one years; and in default of the exercise of the power of appointment by Daughter and the failure of surviving issue, the corpus was to be paid over and distributed to the University of Pennsylvania. Settlor further provided that in the event Daughter pre-deceased Decedent without Daughter's having exercised the power of appointment and without surviving issue, then Decedent was given the power to appoint, failing the exercise of which the corpus of the trusts was to be paid to the University of Pennsylvania. The trusts were irrevocable by Settlor but Decedent was given the power to revoke or to alter and amend at anytime and in all respects. It is agreed by the parties that this provision gave Decedent a general power of appointment.

On December 22, 1942, Decedent executed amendments to each of the trust instruments. By the amendments, Decedent changed the general testamentary power of appointment which had been given by Settlor to Daughter to a special power of appointment to designate for the benefit of Daughter's spouse or to or for the benefit of Daughter's descendants or spouses of such descendants, and in default of the exercise of such power of appointment, the corpus of the trusts

was to be paid to Daughter's issue, per stirpes, upon the attainment of the age of twenty-one years, and, if Daughter died without issue, then to her heirs at law. By the amendments Decedent also gave the trustees power to invade principal for the proper maintenance, support, health, welfare and happiness of Daughter during the time Daughter was entitled to receive the income. Having executed the amendments, Decedent then made the instruments irrevocable. Decedent died on January 26, 1954.

On April 19, 1955, plaintiff filed with the District Director of Internal Revenue for the District of Philadelphia, an estate tax return on Decedent's estate and paid the tax shown to be due thereon in the amount of Fifty-three Thousand Nine Hundred Eighty-five Dollars and Ninety-six Cents ($53,985.96). On the return plaintiff did not include the full value of the assets contained in the two trusts. After an audit, the Commissioner of Internal Revenue determined that the full value of the trusts should have been included in Decedent's taxable estate and assessed a tax deficiency against the estate in the amount of Nine Thousand Three Hundred Ninety-three Dollars and One Cent ($9,393.01). Plaintiff paid the deficiency in full, plus interest in the amount of Seven Hundred Eighteen Dollars and Thirty-seven Cents ($718.37), on October 24, 1956. On September 18, 1958, the plaintiff, as Executor, filed a claim for refund of taxes and interest in the amount of Thirteen Thousand Two Hundred Twenty-three Dollars and Fifty-eight Cents ($13,223.58), contending that none of the value of the two trusts referred to above should have been included in the estate. The claim for refund was disallowed by the District Director of Internal Revenue on March 18, 1960. Plaintiff agrees that the applicable Statute of Limitations bars him from claiming any but the amount of tax he paid on October 24, 1956.

The question in this case is whether the trust amendments executed by Decedent on December 22, 1942, constituted an exercise of her general power of ap-

pointment rendering the property subject thereto taxable as part of her estate. The applicable section of the Internal Revenue Code is Section 811(f) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 811(f), as amended.

Involved are three periods in the development of tax law on powers of appointment:

(1) Prior to October 21, 1942, property subject to a general power of appointment was not included in the gross estate and was not taxable unless the power was exercised and property passed.

(2) Under amendments contained in the Revenue Act of 1942 (adopted October 21, 1942), mere possession of a power of appointment, regardless of exercise or whether property "passed", subjected the property to tax unless such power theretofore created was released on or before January 1, 1943. In the 1942 amendment, however, "power of appointment" was defined to exclude, inter alia, a power to appoint within a class consisting, generally, of members and descendants of the donee's immediate family, and members and descendants of donor's immediate family (excluding decedent). By successive Acts of Congress, the time within which to release powers created prior to October 21, 1942 was extended to June 30, 1951.

(3) On June 28, 1951, the Powers of Appointment Act of 1951, 65 Stat. 91, was enacted, as a result of which the law with respect to powers of appointment created prior to October 21, 1942 was returned substantially to that in effect prior to the adoption of the 1942 amendment, i. e. taxability of property subject to power of appointment was made to depend upon the exercise of the power, although the requirement of passing was eliminated. The 1951 Act contained a provision for tax free periods within which existing powers of appointment, which would result in the imposition of estate and gift taxation, could be released tax free. The incidence of estate taxation on pre-existing powers under the 1951 Act was made to depend on the

exercise of general powers only, as that term was defined in the 1951 Act, i. e. one exercisable in favor of the donee, his estate or his creditors. The 1951 Act provided that the amendments therein contained were to take effect as to estates of decedents dying after October 21, 1942 as though the 1942 Revenue Act had never been enacted. The 1951 Act further provided that where a pre-existing general power of appointment is partially released before November 1, 1951, or within the time fixed by paragraph 2 of § 403(d) of the 1942 Revenue Act, so that it is no longer a general power of appointment, its subsequent exercise would not be deemed an exercise of such power for federal estate and gift taxation.

The case before us is touched by the law of each of the three periods in the development of tax law on powers of appointment mentioned above. The original Deed of Trust was executed in 1934, under what we may describe as the pre 1942 law. Amendments to the trust instrument were executed by Decedent in December 1942 in an apparent effort to take advantage of the grace period permitted by the 1942 Act. Decedent died in 1954 which was after the passage of the 1951 Act.

The Government has taken the position that, in making the amendments to the trust instruments, Decedent exercised her general power of appointment, she did not release it. The Government's argument generally is: The Powers of Appointment Act of 1951 was effective *as if* enacted on October 21, 1942; the 1951 Act permitted a partial release and a *subsequent* exercise within a special class to escape taxation; Treasury regulations thereafter adopted and which were controlling at the time of Decedent's death, provided that if, at the time of relinquishment of a general power, a power was exercised in such a manner as to result in any change in the beneficial interests in the property, such relinquishment is an exercise and not a release of the power; Decedent changed beneficial interests in the property by amendments in the same instrument by which she released

her general power, therefore, Decedent's actions fail to qualify for exempt status tested both by the words of the Act of 1951 and the regulations thereafter adopted.

The thrust of Government's argument is that the Decedent's acts must be judged by the procedural standards of the 1951 Act and since she failed to conform, she is not entitled to the exemption. The Government concedes that under the 1951 Act a partial release of a taxable power may convert that power into a nontaxable power, the subsequent exercise of which is not a taxable act, but it asserts that since Decedent made changes in the same instrument in which she gave up (by making the trust irrevocable) her general power of appointment, what she did constituted an exercise, rather than a release of a taxable power.

In support of its argument that there was an exercise of a power of appointment, the Government points to Keating v. Mayer, 236 F.2d 478 (3d Cir. 1956) to illustrate that the exercise of a general power, no matter how small the amount of exercise, or indeed even if it is ineffective, will result in taxation. In Keating, decedent, by will, made a general disposition of all her property to her sons, her only issue. At the time of her death she possessed a life interest in and a general power of appointment over a trust estate established by the will of her grandfather which provided for a gift to decedent's issue in default of decedent's exercise of her general power. Notwithstanding that under Pennsylvania law decedent's general disposition of her estate to her sons was an ineffective exercise of the power in that the sons were regarded as having received their interest from great-grandfather-donor's will, it was nevertheless held to be an exercise of a general power of appointment which subjected the property to tax since both the Revenue Act of 1942 and the Powers of Appointment Act of 1951 had eliminated the requirement of "passing". The Court of Appeals pointed out that the holding that the general disposition of all her property by decedent constituted an "exercise" of the general power, was compelled by operation of the Pennsylvania Wills Act of 1947 which provided that, in the absence of a contrary intent expressed in the will, a general disposition of property by a testator "shall" be construed to include any property over which testator had a general power to appoint and "shall operate" as an execution of such power.

In our view, therefore, Keating does not control the instant case and indeed furnishes very little guidance except to make clear that the requirement of "passing" had been eliminated by both the Acts of 1942 and 1951.

We do not regard the crucial question in this case as being whether there was an "exercise" as opposed to a "release" of a power. That there was an exercise of a power here is clear. The question really is whether what Decedent did constituted the exercise of a taxable general power of appointment or constituted the exercise of an exempt special power. We regard that as the proper view of the issue presented to us because of the procedural uncertainty of the law as it existed on December 22, 1942, the date when Decedent acted, irrevocably, in response to the newly imposed tax liability on the mere *possession* of a general power of appointment.

Under the 1942 Act, as pointed out above, taxable powers were defined to *exclude* a power to appoint to the special class consisting generally of members of the family and descendants. As revealed by regulations thereafter adopted (the earliest of which we have knowledge having been promulgated in March 1943), and as finally clarified by the Act of 1951, the 1942 amendments permitted the holder of a general power of appointment to reduce that taxable general power to an exempt power to appoint within a special class, and thereafter exercise the exempt power without tax consequence. The Government argues that Decedent did not do that in this case since both the release and the exercise were contained in the same document, a procedure clearly

prohibited by the 1951 Act and regulations promulgated pursuant thereto.

As to any persons acting after the adoption of regulations clarifying the 1942 Act, or after the passage of the 1951 Act, we would have no hesitance in requiring the possessor of a general power to adhere strictly to the indicated tax free route, but in the instant case, we are asked to hold Decedent to a route which had not been posted at the time she acted. On October 21, 1942, she was faced with the alternative of recasting her power within two months or subjecting her estate to taxability. She had no reason to anticipate the numerous extensions of the grace period. She had for her only guidance the wording of the 1942 amendment which the Senate Committee characterized in 1951 as leading to "wide-spread dissatisfaction". S.Rep. No. 382, 82d Cong. 1st Sess., U.S.Code Congressional and Administrative Service, p. 1530. There were no clarifying regulations and there was an apparent imminent deadline for action to be taken to reach the tax free shelter provided by the 1942 Act's definition of taxable power.

We think it equitable and proper to judge Decedent by the substance of her actions rather than on the basis of a procedure finally adopted some nine years later.

■■ Clearly a taxpayer has no vested interest in the tax law as it exists at any particular time. Had Congress determined in 1942 to subject all powers of appointment to estate or gift tax, unquestionably it had the power to do so. Wear v. Commissioner, 65 F.2d 665 (3d Cir. 1933). That is not what Congress did. By the 1942 Act it made powers taxable but permitted the holders of powers theretofore created to follow a course of action to maintain a non-taxable status. Relying on that, Decedent acted. In 1951 Congress enacted legislation substantially restoring the status quo ante 1942. Had Decedent done nothing in response to the warning of the 1942 Act and had she waited until after the passage of the 1951 Act she could have accomplished all that she did in the trust amendments without tax consequence. The basis for imposing the tax in the instant case is Decedent's attempt to conform to the requirements of the 1942 Act. To say that a party may thus be drawn legally off side by legislative feint and then penalized for that action offends a basic sense of fair play. We cannot believe that Congress intended such a result. Decedent's actions, therefore, should be tested by the spirit and substance of what Congress seemed so clearly to intend rather than by the test of a later pronounced form and procedure.

Judged on the basis of compliance with the spirit and substance of the Acts of 1942 and 1951, we conclude that Decedent clearly intended to take advantage of the tax free shelter which Congress made available for those possessing powers theretofore non-taxable. Her intention is made abundantly clear by her use of the specific words employed by Congress to define one of the exempt classes. Decedent's difficulty arose from her conscientious effort to act before the apparent deadline of January 1, 1943 and from an inability to predict future actions of Congress and of the Treasury Department. She made her attempt by several actions in one document which subsequent legislation and regulations dictate should have been accomplished by separate documents. She should not be held to the standards of a form clearly seen by hindsight so long as the substance of what she did was permissible by the Acts of 1942 and 1951.

We have stated above that had Decedent not acted in reliance on the change effected by the 1942 Act, she could have made every change she did make by the trust amendments without tax consequence. That assumes, of course, that had she waited she would have followed the form clearly set forth in the 1951 Act. The changes she made were:

(1) She reduced Daughter's general power of appointment to a special power;

(2) In default of exercise of the special power by Daughter, and in default of issue of Daughter, Decedent eliminated University of Pennsylvania as a default remainderman in favor of Daughter's heirs at law;

(3) Decedent eliminated her own contingent testamentary general power of appointment and University of Pennsylvania as default remainderman;

(4) Decedent added the power of the trustees to invade corpus of the trust for the maintenance, welfare and happiness of Daughter during the period when Daughter was entitled to receive the income from the trust.

The Government had contended that even if Decedent had followed the form prescribed by the 1951 Act, she could not, in the exercise of an exempt special power of appointment, have taken away Daughter's general power of appointment. In support of that contention, Government had made the statement, without citation of authority, that "the holder of a special power has no power to explicitly divest another of a general power". That argument overlooks the fact that Daughter never had a general power of appointment. Whatever power she was given by Settlor was defeasible, subject to the exercise of Decedent's power of appointment, either as originally created by Settlor, or as reduced to comply with the requirements of the 1942 Act. Beyond that, it appears fundamental that, if Decedent was the holder of an exempt special power to appoint to any one within a class of which Daughter was a member, Decedent could exercise that power (a) by giving the corpus of the trust outright to Daughter; or (b) by eliminating Daughter completely in favor of some other member of the class; or (c) by appointing to Daughter some interest in the trust estate between those two extremes. In our view, therefore, granting to Daughter a life estate and a testamentary power to appoint to Daughter's spouse and descendants was well within the exercise of Decedent's exempt special power.

The Government attacks one other change effected by Decedent's amendments to the trust, the addition of the power of the trustees to invade the corpus of the trust for Daughter's maintenance and welfare. Government points out that Decedent was one of the trustees and by that amendment she retained for herself control over the disposition of the corpus of the trust. We would be persuaded by that argument but for the fact that the power to invade corpus existed only during the time Daughter became entitled to the income of the trust estate, i. e. after Decedent's death, a time when, obviously, Decedent could not occupy the position of trustee.

In a somewhat analogous factual situation Judge Wyzanski of the District Court of Massachusetts in Emery v. United States, 153 F.Supp. 248, 251 (D.C. Mass.1957) granted a refund of gift taxes. We are impressed with the logic and reasoning expressed in Judge Wyzanski's opinion in support of his conclusion. Little purpose would be served by quoting in extenso from his excellent opinion although much of the language therein contained is quite pertinent to the issue before us. We point out only, as Judge Wyzanski emphasized in Emery, that in the instant case "Not one of these changes would have been for the benefit of the (decedent) or anyone else outside the exempted class. All of them would have represented exercises in favor of issue, spouses of issue, and charities, that is, persons within a class exempted by * * * the Revenue Act of 1942".

In the instant case Decedent went outside the class of persons included in the definition of exempt power only to the extent that she made an ultimate disposition of the corpus to Daughter's heirs at law upon default of the exercise of the special power by Daughter and upon default of issue of Daughter. In that respect Decedent is saved by the provisions of the 1951 Act which makes such a disposition non-taxable. We regard the 1951 Act, since it was effective as if enacted in 1942, as being applicable to the

instant case, save only for the procedural requirements therein contained. To that limited extent, for the reasons set out above, we hold that the 1951 Act was not binding upon Decedent.

Plaintiff's motion for summary judgment will be granted. Counsel will submit an appropriate form of Order.