Elsie C. EMERY
v.
UNITED STATES of America.
Civ. A. No. 56-1000.

United States District Court
D. Massachusetts.
June 24, 1957.

Goodwin, Proctor & Hoar, Roger P. Stokey, and Allan H. W. Higgins, Boston, Mass., for plaintiff.

Jerome S. Hertz, Tax Division, Dept. of Justice, Washington, D. C., Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is an action for the refund of gift taxes paid for the year 1949. The issue is whether when on July 1, 1949 the taxpayer executed what she called a "release of power of appointment and other powers" with respect to five trusts created on August 20, 1937 by her husband, she engaged in a taxable exercise of a power of appointment under the provisions of § 1000(c) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 1000(c), or, on the contrary, she came within the exception provided by § 452(c) (1) of the Revenue Act of 1942, c. 619, 56 Stat. 798, 952 as amended by a series of statutes culminating in the Joint Resolution of June 27, 1950, c. 371, 64 Stat. 260, 26 U.S.C.A. § 1000 note.

August 20, 1937 the taxpayer's husband created five irrevocable trusts. The trusts designated as trustee the Boston Safe Deposit and Trust Company, and were identical except for the naming of a different child of the donor with that child's spouse and issue. Each trust gave the taxpayer full power to alter, amend or revoke the trust. On revocation, the principal, or such part as she should designate, was to be paid to her. The principal dispository provisions of each of the five trusts follow:

(a) The taxpayer was to receive $300 monthly, payable first out of income and thereafter out of principal, if necessary.

(b) Income not required for the $300 monthly payment should be paid to any "person, corporation, association or institution for the purpose of promoting, assisting or carrying on any religious, charitable, or educational activity or project which the Donor" and the taxpayer, or the survivor of them might designate.

(c) Upon the death of the taxpayer the trustee should set aside as a separate fund such amount of the principal as in its opinion would produce an income of $300 per month. The income from this separate fund was to be paid to a named child if living (otherwise to his living issue, surviving spouse, or heirs, in that order) for a period of five years, after which the principal was to be paid to the beneficiaries then entitled to the income.

(d) The portion of the trust not so set aside in the separate fund should, at the end of the five year period be paid to such "persons, religious, charitable, or educational institutions" as should be designated by the beneficiaries entitled to the separate fund, or, failing their designation, by the trustee.

The settlor filed appropriate federal gift tax returns for the property he then and later transferred to the trustee, and also paid the gift taxes due on his transfers.

Pursuant to her power of amendment, taxpayer made four amendments to each of the five trusts. These amendments were made on September 28, 1937, August 29, 1939, January 8, 1942, and on January 21, 1944. The first four amendments, being earlier than the 1942 Revenue Act, need not be summarized in this opinion.

The January 21, 1944 amendment in form rewrote the entire instrument. But in fact most of the provisions were left unchanged. However, these changes were made:

(a) The taxpayer's right to $300 was to be payable out of principal "in the sole discretion of the trustee."

(b) The taxpayer's power to alter, amend, or terminate the trust was narrowed to a power (acting jointly with the donor, and solely if she survived him) to direct the trustee to make payments of income or principal for "religious, charitable, and educational purposes."

(c) The requirement that the trustee set aside a portion of the trust sufficient to pay $300 per month to the named child, and so forth, was eliminated. Instead, the trustee was directed to pay the net

income of the trust, but not in excess of $250 per month to the named child, if living, otherwise to his surviving spouse and issue in that order. The trustee was authorized to pay to an income beneficiary principal, such an advancement operating to reduce that beneficiary's future participation with respect to both principal and income. At the end of a ten year period the corpus was to be paid to the persons then entitled to the income.

(d) Administrative details were altered.

On July 1, 1949 taxpayer released her remaining power to direct the trustee to make payments of income or principal for charitable purposes. Thereafter her only interest in each trust was the right to receive $300 per month out of income if available and in the sole discretion of the trustee out of principal.

Both the taxpayer and the government agree that in 1937 when the trusts were established the taxpayer, since she then had an unlimited power to alter the trusts, had a general power of appointment.

The parties are also in agreement that before the Revenue Act of 1942 there was no federal gift tax upon the *inter vivos* exercise or release of either a general or a special power of appointment. However, the 1942 act, amending § 1000 (c) of the Internal Revenue Code of 1939, imposed a gift tax upon the donee's *inter vivos* exercise or release of any power of appointment, except a power under which the donee could only appoint to members of his immediate family or that of the donor of the power or to a charity (and except a power exercisable by a disinterested fiduciary—a provision not here relevant.) The applicable words are in § 452(a) of the Revenue Act of 1942, 56 Stat. 798, 952:

"(a) General Rule.—Section 1000 (relating to imposition of gift tax) is amended by inserting at the end thereof the following new subsection:

"'(c) Powers of Appointment.— An exercise or release of a power of appointment shall be deemed a transfer of property by the individual possessing such power. For the purposes of this subsection the term "power of appointment" means any power to appoint exercisable by an individual either alone or in conjunction with any person, except—

"'(1) a power to appoint within a class which does not include any others than the spouse of such individual, spouse of the creator of the power, descendants of such individual or his spouse, descendants (other than such individual) of the creator of the power or his spouse, spouses of such descendants, donees described in section 1004(a) (2), and donees described in section 1004 (b). As used in this paragraph, the term "descendant" includes adopted and illegitimate descendants, and the term "spouse" includes former spouse; and' "

The parties are also in agreement that if by virtue of the foregoing provision of the 1942 amendment to § 1000(c) of the Revenue Act of 1939, there is a taxable transfer in this case it occurred in 1949 and not in 1944. A reason that the taxpayer's amendment to the trusts could not have constituted a taxable transfer in that year is that the taxpayer still retained the power (acting with the donor) to direct the trustee to make payments of income or principal for charitable purposes. And it is well established that under the federal gift tax law, a gift is not complete where the donor or donee of the power reserves the power to determine whether the donees ultimately entitled to enjoy the property are charities of a class that would exempt the gift from taxation. Sanford's Estate v. Commissioner, 308 U.S. 39, 46–47, 60 S.Ct. 51, 84 L.Ed. 20. Hence it was not until the taxpayer in 1949 removed this flexibility with respect to charities, that the members of the taxpayer's family became vested re-

maindermen as distinguished from takers in default of appointment.

But, although both parties agree that no taxable transfer occurred in 1944, and further agree that the effect of what happened in 1944 has to be looked at together with what happened in 1949, they differ as to the effect of the two amendments taken together. The taxpayer's contention is that in each of the five trusts the taxpayer reduced what had been a general power of appointment to a special power to appoint to her children and charities and thus brought herself within the exception established by § 452(c) (1) of the Revenue Act of 1942, and carried forward in 10 succeeding acts of Congress. The government contends that she did not merely release her general power or reduce it to a special power, but instead exercised her general power to vary each trust.

In short, the parties disagree on whether what the taxpayer in this case did in 1944 and 1949 constitutes a "release" within the meaning of a statutory provision which was first introduced by § 452(c) (1) of the Revenue Act of 1942, 56 Stat. 952 and, (with appropriate change of date to cover the period up to 1951) was carried forward in 10 successive annual acts of Congress.

This provision originally read

"A release of a power to appoint before January 1, 1943, shall not be deemed a transfer of property by the individual possessing such power."

The date was carried forward to July 1, 1951 by ten later statutes, but the other parts of the provision remained identical. 56 Stat. 1054; 57 Stat. 150; 58 Stat. 72–73, 830; 59 Stat. 264; 60 Stat. 229; 61 Stat. 178; 62 Stat. 387–388; 63 Stat. 280; 64 Stat. 260. See note to 26 U.S. C.A. Internal Revenue Code of 1939 as amended, § 1000.

■ It is not disputed that to qualify under this language a release may be informal. Treas.Reg. 108, Sec. 86.2(b) (1943). Nor is it disputed that the release may take the form of cutting a general power down to a special power of the type exempted by § 452(a) of the Revenue Act of 1942 and codified in § 1000(c) (1) of the Internal Revenue Code. The just cited Treasury Regulation so acknowledges:

"The reduction in scope of a power of appointment, as defined in section 1000(c) to an excepted power under section 1000(c) (1) which is not a power of appointment as thus defined, constitutes the release of the power of appointment."

■ The controversy at bar turns on whether since the taxpayer in 1944 simultaneously and in one document called an amendment (a) reduced her general power to a special power and (b) altered the beneficial interests under the trusts, she can be regarded as having made that sort of partial release which is valid under § 452(c) (1) of the Revenue Act of 1942, as amended and continued by subsequent statutes in each of the ten following years.

No one doubts that every object which the taxpayer sought to achieve and did achieve by her 1944 and 1949 amendments could have been carried through as a tax-free release under the applicable revenue acts. A competent, expert lawyer would have advised the taxpayer to take these steps: First, she should have executed an instrument reducing her general power over the trusts to a special power to appoint to (or make amendments in favor of) issue, spouses of issue, or charity. Then she would have had a power exempted by § 1000(c) (1) of the Internal Revenue Code. Second, she should have executed another document (a) reducing her right to payment of $300 out of income and out of principal if necessary, to $300 out of income and out of principal "in the sole discretion" of the trustee, (b) reducing the payment to each child from $300 to $250 a month, (c) eliminating the separate funds, and (d) postponing from 5 to 10 years after her death the time of payment of principal. Not one of these changes would have been for the benefit of the taxpayer or anyone else outside the exempted class.

All of them would have represented exercises in favor of issue, spouses of issue, and charities, that is, persons within a class exempted by § 1000(c) (1) of the Revenue Act of 1942. Third, she should have released her power to direct the trustee to make payments of income or principal for charitable purposes. This change, likewise, would have been an exercise in favor not of herself or any other person outside the exempted class, but solely of persons within the class exempted by § 1000(c) (1) of the Revenue Act of 1942.[1]

But the government argues that it is entirely beside the point to consider whether *the substance* of what taxpayer did is the precise equivalent of a reduction of a general power to a special power and the exercise of a special power. It is the government's position that the controlling consideration is that the taxpayer *in form* acted under general power simultaneously to alter the economic rights of beneficiaries and to reduce the scope of her future authority to that of the holder of a special power to benefit persons within the exempt class. That is, the government says she exercised her general power and did not merely release it.

The government is, of course, correct in describing the form of the transaction. Yet this Court is not persuaded that in interpreting the release provisions of Section 452(c) (1) of the Revenue Act of 1942, and the later amendments to that

subsection, the form rather than the substance should control. That subsection and its successors do not emphasize mere form. The language of the statutes did not point to some particular set of magic words which must be used to constitute a release. Nor was the purpose of these statutes directed at, nor would it be served by, a particular order of procedure. The statutory object, emphasized by many successive sessions of Congress, was to protect from taxation a donee of a power who disabled herself from exercising a power for the economic benefit of others than those in the exempted class. This was the precise object the taxpayer contemplated and accomplished. And this object will be frustrated if the taxpayer is denied an exemption merely because her lawyer did not clearly indicate what was the substance of the transactions which were effectuated in 1944 by the documents he had prepared. This Court, therefore, concludes that the taxpayer did not make a taxable gift when in 1949 she amended the five trusts.

The Court having rested its decision upon the provisions of § 452(c) (1) of the Revenue Act of 1942, as amended, it seems superfluous to consider whether The Powers of Appointment Act of 1951, Act of June 28, 1951, 65 Stat. 91, 93–94, amending § 1000(c) of the Internal Revenue Code can be read retrospectively to accomplish the same result.

Judgment for plaintiff.

---

1. Not only could the taxpayer without incurring a gift tax have made all those changes with respect to beneficial interests, but she could also have made all the changes she did make in connection with the administration of the trust. In general, changes in administration of a trust do not affect beneficial economic interests. The 1944 administrative changes are not shown to have had any

such effect. On the contrary, the administrative provisions which were set forth in the 1944 amendment were all consistent with the existence of a special power to benefit persons in the exempted class. Hence the 1944 administrative changes did not for tax purposes constitute the exercise of a power of appointment.