ESTATE OF LEO M. GARTLAND, DECEASED, MATTHEW GARTLAND, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81540. Filed August 18, 1960.

868

*Sol Goodman, Esq.*, for the petitioner.
*Robert E. Johnson, Esq.*, for the respondent.

OPINION.

Scott, *Judge:* Respondent determined a deficiency in petitioner's estate tax in the amount of $88,941.53. Concessions of each party are to be reflected in a computation under Rule 50.

The sole issue remaining for decision is the correctness of respondent's action in including in the gross estate of the decedent, Leo M. Gartland, the amount of $258,968.29, representing the value of the corpus of a trust created by Matthew F. Gartland, decedent's father, on July 10, 1929.

The facts have been stipulated and are found accordingly.

Petitioner's estate tax return was filed on June 12, 1956, with the district director of internal revenue, Indianapolis, Indiana. Leo M. Gartland died intestate on April 1, 1955, survived by his widow and three children, one of whom is Matthew Gartland, administrator of the estate of Leo M. Gartland.

On July 10, 1929, the decedent's father, Matthew F. Gartland, of Marion, Indiana, assigned, transferred, and conveyed certain bonds and stocks to S. Roswell Shepherd, of West Orange, New Jersey, to act as trustee under the terms of a trust agreement. Subdivision A of article 1 of the trust agreement provided that it should be the duty of the trustee "[t]o pay over to my son, Leo M. Gartland, so much of the income as the Trustee in his discretion shall deem advisable and to accumulate the remaining income and add it to the principal of the trust fund during the life of my said son."

The trust further provided that upon the death of Leo M. Gartland, the trustee was to pay over the income to Irene S. Gartland, the wife of Leo M. Gartland, during her life, and upon the death of the survivor of the two, to divide the principal of the trust fund into as many equal shares as there were living children of Leo M. and Irene S. Gartland and descendants of a deceased child. Provi-

sion was made for the payment of one-half of the share of the principal of each son of Leo M. Gartland and Irene S. Gartland to him upon his attaining the age of 25 years and his remaining share of principal when he attained the age of 30 years. The payment of one-half the principal of the share of each daughter was to be made to her upon her attaining age 25. Provision was made for the payment of principal not paid over to a child of Leo M. and Irene S. Gartland as such child might appoint by will, or to his or her descendants absent such appointment, and if there were no appointees or descendants of any such child, to the descendants of Leo M. Gartland, and if none, to the descendants of the grantor. The trust instrument retained the right to the grantor or any other person to increase the trust by delivering property or making insurance policies payable to the trustee. The trust provided that the trustee should secure the written approval of Leo M. Gartland to the purchase or sale of any securities which the trustee proposed to make and provided for the investment in promotional or speculative securities at the direction of Leo M. Gartland. It provided for a corporate cotrustee and substitute trustee, the National City Bank of New York and the Farmers Loan and Trust Company of New York City, or such bank or trust company as may succeed to the trust business of that company, respectively.

Paragraph 8 of the trust agreement provided as follows:

8. I hereby authorize and empower my son, Leo M. Gartland, during his life, to amend or terminate this agreement in whole or in part and to change any beneficial interest hereunder by delivering to the Trustee an instrument in writing executed by him. In the event of the termination of this trust by my said son, the Trustee shall pay over the principal of the trust fund to him or to such person or persons as he may designate in writing to the Trustee.

On July 18, 1929, S. Roswell Shepherd acknowledged delivery of the trust agreement in Jersey City, New Jersey, and accepted the trusteeship.

On July 23, 1929, S. Roswell Shepherd, under the authority granted to him by the trust instrument, appointed the National City Bank of New York as cotrustee, and the Farmers Loan and Trust Company as successor cotrustee if the appointed cotrustee should resign. The National City Bank of New York accepted the appointment, and on August 6, 1929, S. Roswell Shepherd resigned the trusteeship.

On August 15, 1929, the decedent, pursuant to the power granted to him under paragraph 8 of the above trust instrument, executed a document stating that he altered and amended the trust agreement in the respects outlined. This amendment provided that anything to the contrary notwithstanding, upon the death of the youngest child of Leo M. and Irene S. Gartland at that time living who

should survive the two, the trustee should pay over the principal of the trust fund to each thereafter born child, and further provided for the disposition of the one-half share of the interest of each daughter, which was not specifically provided for in the original trust agreement. This instrument stated, "In all respects, except as herein expressly modified, I ratify and confirm all the provisions of said Agreement." The agreement provided that the amendment would take effect upon acknowledgment by the trustee of its consent thereto, and on August 15, 1929, the National City Bank of New York, the then trustee, acknowledged and consented to the decedent's amendment and alteration of the trust.

On January 20, 1930, the National City Bank of New York resigned the trusteeship, and the City Bank Farmers Trust Company, successor to the trust business of the Farmers Loan and Trust Company, accepted appointment as successor trustee.

On May 16, 1931, the decedent mailed a letter to City Bank Farmers Trust Company, the then trustee, reading, "Owing to present conditions the writer finds it necessary to use the income of his trust. You may use this as your authority to transfer the cash in my principal account to the income account and send check at your convenience. You may use these instructions until further notice."

On May 19, 1931, City Bank Farmers Trust Company paid the decedent a total amount of $1,292.98, which amount was comprised of prior accumulated income which had previously been added to trust principal in the amount of $547.35 and the present income balance of $745.63, advising the decedent by letter that the notation was being made on the trustee's records that decedent wished all of the income remitted to him, stating the tentative arrangements for quarterly remittances.

On January 19, 1938, the decedent executed a document addressed to City Bank Farmers Trust Company, successor trustee under the trust agreement made on the 10th day of July 1929 between Matthew F. Gartland as donor and S. Roswell Shepherd as trustee for the benefit of Leo M. Gartland, as amended. This instrument recited the provisions of subdivision A of article 1 of the trust agreement with respect to the discretion of the trustee to pay over income to decedent or accumulate such income, and the provisions of article 8, empowering Leo M. Gartland to amend or terminate the trust. It also ratified the payment by the trustee to the decedent of the current trust income and the accumulated income in the amount of $547.35 which had previously been added to the trust principal, which payments were made pursuant to the directions in decedent's letter of May 16, 1931, and further provided:

the said Leo M. Gartland does hereby amend said trust by striking out, canceling and annuling Subdivision "A" of Article 1 thereof and by substituting

in lieu thereof a new Subdivision "A" of Article 1 which shall read as follows:

"A. To pay over the net income thereof to my son, Leo M. Gartland, during his life."

all with the same force and effect as if this instrument had been delivered by him to said Trustee on May 16, 1931.

On January 24, 1938, City Bank Farmers Trust Company acknowledged receipt of the instrument executed by decedent on January 19, 1938.

On June 20, 1945, the decedent executed a document entitled, "Surrender by Leo M. Gartland of Power of Appointment Under Trust Agreement of Matthew F. Gartland," which provided as follows:

That I do hereby finally and irrevocably renounce, release and surrender the Power of Appointment which is conferred upon me in and by Paragraph 8 of a Trust Agreement made by my father, the late Matthew F. Gartland, of Marion, Indiana, dated July 10th, 1929, over the trust fund for my benefit under said trust agreement.

It is my intent by this instrument to divest myself completely and irrevocably of all powers, rights and privileges granted to me by said trust agreement to dispose of, or to direct the disposition of, the principal or income of any part of the trust fund for my benefit under said trust agreement, as if such power of appointment had not been granted.

This document was acknowledged by City Bank Farmers Trust Company on July 31, 1945.

At the date of decedent's death, April 1, 1955, the corpus of the trust originally created by decedent's father on July 10, 1929, consisted of cash in the amount of $2,975.10 and stocks and bonds of a fair market value of $259,355.63. There existed a cash overdraft of $3,362.44, leaving a fair market value of the trust corpus at the date of decedent's death of $258,968.29.

The question here presented is whether the corpus of the trust is includible in decedent's gross estate under the provisions of section 2041(a)(1)(B) of the Internal Revenue Code of 1954,[1] providing for the inclusion in the gross estate of the value of property subject

---

[1] SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

(1) POWERS OF APPOINTMENT CREATED ON OR BEFORE OCTOBER 21, 1942.—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

     *         *         *         *         *         *         *

(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive;

but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—

(i) such partial release occurred before November 1, 1951, or

(ii) the donee of such power was under a legal disability to release such power on October 21, 1942, and such partial release occurred not later than 6 months after the termination of such legal disability.

to a power of appointment created on or before October 21, 1942. Under the provisions of this section the gross estate shall include the value of property subject to a power of appointment created before October 21, 1942, to the extent of any property with respect to which a general power of appointment created on or before such date is exercised by the decedent by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive, of the 1954 Code. The parties agree that the provisions of paragraph 8 of the trust instrument of July 10, 1929, created a general power of appointment in the decedent within the meaning of section 2041 of the 1954 Code. Thus, the questions we are called upon to decide are whether this general power of appointment was exercised by the decedent, and if so, whether it was exercised by a disposition which is of such nature that if it were a transfer of property owned by decedent, such property would be includible in decedent's gross estate under the stated provisions of the Code.

The statute specifically provides that a failure to exercise such power or the complete release of such power shall not be deemed an exercise thereof. It is petitioner's position that decedent did not exercise the power but made a complete release thereof by the document dated June 20, 1945, or if such document is not considered as a complete release of the power, that decedent failed to exercise such power.

Respondent recognizes that the modifications made in the amendment to the trust agreement dated August 15, 1929, whereby decedent made certain changes for the purpose of avoiding questions of the trust violating the rules against perpetuities and to provide specifically for the disposition of one-half the principal allocated to his daughters were not a sufficient exercise of the power of appointment to be a disposition which would fall within the provisions of section 2041(a)(1)(B) of the 1954 Code. Respondent, however, contends that the letter of May 16, 1931, directing the payment to decedent of the trust income previously accumulated and transferred to trust corpus and the current income until further notice and the document of January 19, 1938, amending the trust to provide in absolute terms for the payment of income for life to the decedent, were a sufficient exercise of the general power of appointment to constitute a disposition which is of such a nature that if it were a transfer of property owned by the decedent, such property would be includible in decedent's gross estate under section 2036 of the 1954 Code. Respondent's regulations provide:

Sec. 20.2041–2(d) *Release or lapse.*—A failure to exercise a general power of appointment created on or before October 21, 1942, or a complete release of

such a power is not considered to be an exercise of a general power of appointment. The phrase "a complete release" means a release of all powers over all or a portion of the property subject to a power of appointment, as distinguished from the reduction of a power of appointment to a lesser power. Thus, if the decedent completely relinquished all powers over one-half of the property subject to a power of appointment, the power is completely released as to that one-half. *If at or before the time a power of appointment is relinquished, the holder of the power exercises the power in such a manner or to such an extent that the relinquishment results in the reduction, enlargement, or shift in a beneficial interest in property, the relinquishment will be considered to be an exercise and not a release of the power.* For example, assume that A created a trust in 1940 providing for payment of the income to B for life and, upon B's death, remainder to C. Assume further that B was given the .unlimited power to amend the trust instrument during his lifetime. If B amended the trust in 1948 by providing that upon his death the remainder was to be paid to D, and if he further amended the trust in 1950 by deleting his power to amend the trust, such relinquishment will be considered an exercise and not a release of a general power of appointment. On the other hand, if the 1948 amendment became ineffective before or at the time of the 1950 amendment, or if B in 1948 merely amended the trust by changing the purely ministerial powers of the trustee, his relinquishment of the power in 1950 will be considered as a release of a power of appointment. [Emphasis supplied.]

Under this regulation where a general power of appointment has been exercised in such a manner as to require the inclusion of the property with respect to which it is exercised in the gross estate of the person exercising the power, the subsequent relinquishment of the power will not operate to exclude the property therefrom unless the prior exercise of the power becomes ineffective before or at the time of the relinquishment of the power.

This regulation is in substance the same as section 81.24(b)(1) of Regulations 105, as amended, to conform to the Powers of Appointment Act of 1951 by T.D. 6078, 1954-2 C.B. 286, 291. The amendments made by the Powers of Appointment Act of 1951 were incorporated in the 1954 Code without substantial change. The report of the Senate Finance Committee on the amendment of section 811(f)(1) of the 1939 Code by the Powers of Appointment Act of 1951 [2] (from which section 2041 was derived without sub-

[2] "Section 1 [2] of the bill amends section 811(f) of the code, relating to estate tax on powers of appointment. The new section 811(f)(1) deals with preexisting powers, i.e., powers created on or before October 21, 1942, the date of enactment of the 1942 act. As to such powers it restores the situation which existed prior to that date, i.e., only the exercise of a general power of appointment is taxed. An amendment by your committee makes it clear that a complete release of a preexisting power at any time is not taxable.

"The former statute taxed property 'passing' under a general power of appointment exercised by the decedent. This sometimes gave rise to litigation where the decedent appointed part or all of the property to persons who would also have taken it under the terms of the original instrument creating the power. The bill eliminates this possibility by taxing all property with respect to which the decedent has 'exercised' a general power of appointment.

"With this exception, the intent of the bill is to restore the law regarding preexisting power as it existed prior to the 1942 act. * * * [The Senate Finance Committee Report (S. Rept. No. 382, 82d Cong., 1st Sess. (1952)), covering the Powers of Appointment Act of 1951.]"

stantial change) makes clear the congressional intent to apply to general powers of appointment created before October 21, 1942, the law as it existed prior to that date, except to remove the requirement that the property pass under the exercise of the power. Cases arose under the pre-October 21, 1942, law involving the effective exercise of a power of appointment in such a manner as to change the beneficial interests established by the instrument creating the power by merely reducing certain of those interests. Some courts had applied the property law of the appropriate State to determine whether the property, to the extent it passed to the beneficiary who would have received it by the instrument which created the power, had been transmitted by the exercise of the power. Other courts, irrespective of State property law, had considered the exercise of the power and the taking by the beneficiaries of the property in accordance therewith to subject the entire property to Federal estate tax. This conflict was resolved by the Supreme Court in *Estate of Rogers* v. *Commissioner*, 320 U.S. 410 (1943). The Supreme Court pointed out that it was necessary to turn to State law to determine whether a purported exercise of a power was an effective exercise thereof. Once the question had been resolved by determining that the power had been effectively exercised and the exercise was not merely an echoing of the disposition made of the property by the instrument creating the power, it follows for Federal estate tax law that the property with respect to which the power was exercised was transmitted by the exercise of the power. The Court stated, "That other values, whether worth more or less as to some of the beneficiaries, would have ripened into enjoyment if a testator had not exercised his privilege of transmitting property does not alter the fact that he and no one else did transmit property which it was his to do with as he willed." Thus, the Supreme Court made it clear that under the law as it existed prior to October 21, 1942, an effective exercise of a general power of appointment over property in such a manner as to shift the beneficial interests therein is an exercise of the power for the purpose of determining whether such property is subject to estate tax.

Since the requirement of the "passing" of property under the exercise of a general power of appointment has been removed under section 2041 of the 1954 Code, any exercise of the power in such a manner as to shift the beneficial interests in the property subject thereto should be considered an exercise of the power. A subsequent surrender or relinquishment of the power cannot constitute a *complete* release of the power unless the prior exercise has become ineffective or becomes ineffective simultaneously with the surrender or relinquishment. To hold otherwise would permit an effective

exercise of a general power of appointment in such a manner as to dispose of the property as the holder of the power wished but at the same time permit the property subject to the power to escape the Federal estate tax because of a surrender or relinquishment of the power after it had served the holder's purposes. Respondent's regulation, section 20.2041-2(d), above quoted, providing that a relinquishment of a general power of appointment subsequent to its exercise in such a manner as to shift the beneficial interests in the property will be considered to be an exercise and not a release of the power, is a reasonable interpretation of the statute.

There is no contention made in the instant case that the amendments to the trust agreement made by decedent on May 16, 1931, and January 19, 1938, were not effective to require the trustees to pay the entire income of the trust to the decedent for his life or that these amendments became ineffective before or at the time of the execution of the document of June 20, 1945, surrendering decedent's power of appointment. The petitioner argues that these amendments did not go to the whole property or change the beneficial interests in the property from those established by the trust instrument of July 10, 1929. With this contention we do not agree.

The amendments of May 16, 1931, and January 19, 1938, to the trust agreement required that the entire income of the trust be paid to decedent. Example (2) of section 20.2041-2(c)[3] of the respondent's regulations dealing with a factual situation different from the one in the instant case requires that the disposition of the life income from a trust under a general power of appointment be considered as an exercise of the power going to the entire trust property. In the instant case the original trust instrument provided that the trustee should pay over to decedent so much of the trust income as in its discretion it deemed advisable and accumulate the remaining income and add it to the principal of the trust fund during the life of the decedent. We, therefore, have the question whether the amendments by decedent removing the trustee's discretion and requiring that the entire net income of the trust be paid over to him for life, are a sufficient change from the original trust agreement to constitute an exercise of his power of appointment.

---

[3] Sec. 20.2041-2(c) * * *

\* \* \* \* \* \* \*

*Example (2).* S created a trust in 1930 to pay the income to A for life, remainder as B appoints by an instrument filed with the trustee during B's lifetime, and in default of appointment remainder to C. B exercised the power in 1955 by directing that after A's death the income be paid to himself for life with remainder to C. If B dies after A, the entire value of the trust property would be included in B's gross estate, since such a disposition if it were a transfer of property owned by B would cause the property to be included in his gross estate under section 2036(a)(1). If B dies before A, the value of the trust property less the value of A's life estate would be included in B's gross estate for the same reason.

We cannot assume without proof that the trustee would have exercised its discretion to pay the entire net income of the trust or the income from an identifiable portion of the trust corpus only to decedent. In fact the record shows that in the 2-year period prior to decedent's direction that the income be paid to him, the trustee had accumulated and added to principal $547.35 of the trust income. The record does not show what portion of the total income for the approximate 2-year period the trust had been in existence this amount of $547.35 represented, nor does it show what disposition the trustee intended to make of the current trust income as of May 16, 1931, had it not been directed to pay such amount to decedent. Had the trustee from the inception of the trust until decedent's death accumulated all or a part of the trust income and added it to principal, the corpus of the trust would have been increased thereby and the trust income would likewise have been increased yearly by the income earned from the additions to principal. Therefore, the taking by decedent for his life of the entire income of the trust has resulted in a reduction in the beneficial interest therein of decedent's widow who receives a lesser life income than she would have received had some of the trust income been added to principal prior to decedent's death. Likewise, the beneficial interest in the trust of decedent's children or their appointees or descendants who will ultimately receive the trust income or principal has been reduced. No case has been cited by the parties, nor have we found any, directly interpretating the provision of regulations section 20.2041-2(d) that the relinquishment of the power of appointment after an exercise thereof will be considered an exercise of the power if it results in the reduction or shift in beneficial interest in the property. But the facts of the present case fit clearly within the language of the controlling regulation. Decedent, by his amendments to the trust instrument requiring that the entire income of the trust be paid to him for his life, has shifted the beneficial interests from those provided for in the original trust agreement by increasing his interest and decreasing that of his wife and his children and their appointees or descendants.

We, therefore, hold that the decedent did exercise the general power of appointment granted to him in the trust agreement of June 10, 1929.

We turn now to the question whether the exercise of this general power of appointment by decedent was a disposition of such a nature that if it were a transfer of property owned by him, such property would be includible in his gross estate under sections 2035 to 2038, inclusive, of the 1954 Code. The section under which the respondent contends this property would be includible is section

2036.[4] This section provides for the inclusion in the gross estate of the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death, the possession or enjoyment of, or the right to the income from, the property. This section does not apply to a transfer made before March 4, 1931, nor does it apply to a transfer made on or after March 4, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).[5] If the date of the transfer of the property here involved is either January 19, 1938, the date of the amendment of the trust agreement to provide specifically for the payment of the net income of the trust to decedent for his life, or June 20, 1945, the date of the execution by decedent of the document entitled, "Surrender by Leo M. Gartland of Power of Appointment under Trust Agreement of Matthew F. Gartland," the property would be includible in decedent's gross estate under the provisions of section 2036 of the 1954 Code. If, however, the date of transfer is the original date of transfer of property by Matthew F. Gartland to the trust, then the retention of income for life would not require that the trust corpus be included in decedent's gross estate under section 2036. If the date of transfer of the property were considered to be May 16, 1931, the date of decedent's letter requesting that the trust income be paid to him until further notice, the property is includible in decedent's gross estate only if

---

[4] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

(b) LIMITATION ON APPLICATION OF GENERAL RULE.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

[5] "Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That the first sentence of subdivision (c) of section 302 of the Revenue Act of 1926 is amended to read as follows:

'(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, * * * under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property * * *'"

such inclusion would be required by reason of the language of the joint resolution of March 3, 1931.

Sec. 20.2041–2(c), Estate Tax Regs., provides:

In this connection, the rules of sections 2035 through 2038 which are to be applied are those in effect on the date of the decedent's death which are applicable to transfers made on the date when the exercise of the power occurred. * * *

The provision of this regulation is in substance the same as the following statement of the Report of the Senate Finance Committee on the Powers of Appointment Act of 1951, *supra:*

The rules of section 811(c) and (d) which are to be applied are, of course, those in effect on the date of the decedent's death which are applicable to transfers made on the day on which the inter vivos exercise occurred. For instance, an inter vivos exercise by a decedent dying after the date of the enactment of the Revenue Act of 1950 could not be considered to have been effected in contemplation of death unless it was effected within 3 years prior to death. Similar principles apply to inter vivos exericses or releases of future powers.

This regulation recognizes, as does the statute, that wherever a general power of appointment over property exists in a decedent, that power will have been created in conjunction with a transfer of the property to which the power applies, and that an exercise of the power by the donee thereof is not technically a transfer of property. However, the statute requires that the exercise be treated as if it were a transfer of the property for the purpose of determining the includibility of the property in the gross estate of the person' exercising the power. Section 2041 is concerned not with the includibility of property in the gross estate of the creator of the power but with its includibility in the gross estate of the donee of the power. It logically follows that the date to be considered the date of transfer of the property by the donee of the power should not be the date of the creation of the power by the donor thereof. The respondent's regulation providing that the date of exercise of the general power of appointment shall be considered as the date of transfer of the property for the purposes of sections 2035 through 2038 of the 1954 Code is a reasonable interpretation of the statute.

The theory underlying statutes subjecting to estate tax certain property subject to general powers of appointment is that a person with a general power of appointment over property owns the property for purposes of disposing of it at his death even though in legal theory his rights in the property are less than ownership thereof. See H. Rept. No. 767, 65th Cong., 2d Sess. (re Revenue Act of 1918), 1939–1 C.B. (Part 2) 101. Certainly, under the trust as originally created by decedent's father in the instant case, decedent did in substance own the property transferred to the trust,

although in legal theory the property might pass from decedent's father to the decedent's wife and children. Therefore, when decedent exercised his general power of appointment to take the net income of the trust for his life, he made a disposition which, if it had been a transfer of the property to the trust, was in a manner which would make the property includible in his gross estate. When he surrendered or relinquished his power of appointment without relinquishing his right to the trust income for life, he insured his retention of a complete life estate in the property. It is immaterial whether May 16, 1931, January 19, 1938, or June 20, 1945, be considered as the date of the exercise of the power and thus the date of the transfer of the property. Each of these dates is subsequent to March 3, 1931, and decedent retained the income of the trust for a period that did not end before his death so as to bring the transfer within the provision of section 2036 of the 1954 Code.

We hold that there is includible in decedent's gross estate the value at the date of his death of the entire corpus of the trust created by decedent's father, Matthew F. Gartland, on July 10, 1929.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

