ESTATE OF ANNA J. LOMBARD, DECEASED, LAURENCE M. LOMBARD, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3580–64. Filed June 13, 1966.

*Charles M. Ewing* and *Joseph P. Warner*, for the petitioner.
*J. Frost Walker, Jr.*, for the respondent.

FAY, *Judge:* Respondent determined a deficiency in estate tax in the amount of $180,539.35. The parties settled certain issues raised in the pleadings prior to the time of trial herein.

The sole issue for decision is whether the net asset value, as of the date of decedent's death, of the corpus of a trust created by decedent's deceased husband is includable in decedent's gross estate under the provisions of section 2041(a)(1)(B) of the Internal Revenue Code of 1954.[1]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.

## FINDINGS OF FACT

Some of the facts were stipulated and as stipulated are so found.

Laurence M. Lombard is the executor under the will of his mother, Anna J. Lombard, deceased, who died on October 1, 1960. The estate tax return for her estate was filed with the district director of internal revenue at Boston, Mass.

Anna J. Lombard (hereinafter referred to as decedent) was the wife and widow of Manuel H. Lombard, who died a resident of Massachusetts on January 3, 1938.

On December 31, 1927, Manuel H. Lombard, as grantor, and Manuel H. Lombard and Laurence, as trustees, executed a deed of trust. The trust instrument provided, *inter alia*, as follows:

### ARTICLE II

After making provisions for the expenses of this Trust, including a reasonable fee for the Trustees hereunder, and after making proper reserve for any taxes which might become due, the net income of the Trust Fund shall be accumulated or distributed, in whole or in part as follows:

1. In the discretion of the Trustees, to Anna Josephine Lombard of said Winchester for life.

2. Upon the death of Anna Josephine Lombard, if the Grantor is still living, then to my children Katharine Lombard Groves of Cleveland, Ohio, and Laurence M. Lombard equally.

3. Upon the death of the survivor of Manuel H. Lombard and Anna Josephine Lombard, the principal of the Trust Fund shall be divided equally between Katharine Lombard Groves and Laurence M. Lombard, free and discharged of all Trusts.

4. In case of the death of Katharine Lombard Groves or Laurence M. Lombard prior to the termination of this Trust, the share of the income or principal to which said deceased child would have been at any time entitled hereunder if living, shall be divided equally among his or her issue living at the time of payment or distribution.

### ARTICLE III

The Grantor hereby gives the right to his wife, said Anna Josephine Lombard, to alter or amend this instrument in whole or in part, at any time or times and to change the beneficiaries or their shares hereunder * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

### ARTICLE V

The income or principal of the Trust Fund shall not be assignable and can not be anticipated or alienated in any manner by the beneficiaries present or future, and is not to be subject to the control or claims of creditors, or of the husband of any beneficiary, nor subject to any process of law.

### ARTICLE VI

The trustees shall have as full power as if absolute owners, to invest and reinvest, the Trust Fund including any surplus and also income * * *

### ARTICLE VII

Any Trustee may resign the Trust by written instrument delivered by him to the other Trustee, said resignation to take effect upon delivery or at such later time as is named in the instrument of resignation. On the death, resignation or disability of a Trustee, the remaining Trustee and Anna Josephine Lombard, if living, or if not living then the remaining Trustee and Katharine Lombard Groves, shall, without undue delay, by a written instrument, delivered to the newly appointed Trustee, fill the vacancy in the Trusteeship. On the death, resignation, or disability of both Trustees, Anna Josephine Lombard and Katharine Lombard Groves shall forthwith appoint one or two new Trustees.

Pursuant to the authority granted to her by Article III of the deed of trust executed on December 31, 1927, decedent executed:

(a) On December 7, 1933, an amendment of Article VI of the deed of trust, giving the trustees broad powers of investment.

(b) On July 24, 1935, an amendment of Article II of the deed of trust, such amendment reading as follows:

Pursuant to authority vested in me by Article III of said Deed of Trust, I hereby amend the same by striking out paragraphs numbered 2, 3, and 4 of Article II and substituting in place thereof the following:

"Upon the death of my wife, Anna Josephine Lombard, the Trust Fund and any accumulated income thereon shall be divided into two shares, one share to be held and disposed of for each of my children, Katharine L. Groves of Cleveland, Ohio, and Laurence M. Lombard of Dedham, Massachusetts as follows:

(a) The income from one such share shall be paid to my daughter, Katharine L. Groves and from the other such share to my son, Laurence M. Lombard, at least as often as quarterly for their respective lives and upon the death of either of my said children, or upon the death of Anna Josephine Lombard in case either of my said children shall have predeceased her, then such deceased child's share and all accumulated income thereon, shall be paid forthwith to such of the spouse and issue of said deceased child as he or she shall have appointed, and in default of appointment to the issue of such deceased child in equal shares by right of representation, and in default of issue to the Grantor's then living issue in equal shares by right of representation.

(b) Provided, however, that after the death of said Anna Josephine Lombard, the said Katharine Lombard Groves and the said Laurence M. Lombard shall be entitled upon request in writing to the Trustees to have all or any part of his or her share of the Trust Fund and all accumulated income thereon paid to him or her respectively, forthwith, free and clear of all trusts.

In the construction of this instrument all references to children, grandchildren or issue shall be held to include adopted children or child as to which a petition for adoption shall have been filed."

(c) On June 26, 1946, an amendment of Article II of the deed of trust, such amendment reading as follows:

Pursuant to authority vested in me by Article III of said Deed of Trust, I hereby amend the same by striking out paragraph lettered (b) of Article II reading as follows:

"(b) Provided, however, that after the death of said Anna Josephine Lombard, the said Katharine Lombard Groves and the said Laurence M. Lombard shall be entitled upon request in writing to the Trustees to have all or any part of his

or her share of the Trust Fund and all accumulated income thereon paid to him or her respectively, forthwith, free and clear of all trusts."

said paragraph having been added by amendment of July 24, 1935.[2]

(d) On June 28, 1946, an amendment of Article III of the deed of trust, such amendment reading as follows:

Pursuant to authority vested in me by Article III of said Deed of Trust, I hereby amend the same by striking out said Article III which reads as follows:

"The Grantor hereby gives the right to his wife, said Anna Josephine Lombard, to alter or amend this instrument in whole or in part, at any time or times and to change the beneficiaries or their shares hereunder *.* *"

The amendments of June 26, 1946, and June 28, 1946, were both part of one action but were merely executed on separate days.

Subsequent to June 28, 1946, no other amendments were made or could have been made to the trust.

Pursuant to Article VII of the deed of trust created by Manuel H. Lombard on December 31, 1927, Laurence and decedent on May 21, 1938, appointed Robert Lenox Groves as a trustee of said trust to fill the vacancy created by the death of Manuel H. Lombard.

Laurence and Groves continued as trustees and received compensation therefor during the remainder of decedent's life.

The following table sets forth the net income (gross income less management charges, taxes, and miscellaneous charges) of the trust in question for each of the years from 1940 through October 1, 1960, the date of decedent's death, and the amounts distributed in each of such years to decedent. All of the income not so distributed to decedent was accumulated.

| Year | Net income | Distributed to decedent | Year | Net income | Distributed to decedent |
|---|---|---|---|---|---|
| 1940 | $6,386.13 | $7,120 | 1951 | $7,724.78 | ---------- |
| 1941 | 6,669.50 | 5,890 | 1952 | 7,668.54 | ---------- |
| 1942 | 6,174.90 | 6,765 | 1953 | 7,118.63 | ---------- |
| 1943 | 5,000.71 | 5,245 | 1954 | 8,405.34 | ---------- |
| 1944 | 4,446.71 | 4,490 | 1955 | 9,267.90 | ---------- |
| 1945 | 4,607.21 | 4,285 | 1956 | 10,708.97 | ---------- |
| 1946 | 6,731.66 | 5,660 | 1957 | 10,593.07 | ---------- |
| 1947 | 6,731.70 | 1,680 | 1958 | 9,739.88 | $3,000 |
| 1948 | 5,678.55 | ---------- | 1959 to 10/1/60 | 10,564.89 | 6,500 |
| 1949 | 6,228.28 | ---------- | | 9,504.20 | 3,000 |
| 1950 | 7,802.23 | ---------- | | | |

There was never at any time a promise by the trustees, or either of them, to decedent nor any agreement between the trustees, or either of them, and decedent with respect to whether income from the trust would or would not be paid to her or for her benefit.

The fair market value of decedent's principal assets and vested interests on June 28, 1946, was nearly $400,000.

[2] The effect of this amendment was (1) to reduce Katharine Lombard Groves' and Laurence M. Lombard's interest in the trust to a life interest, as provided by the 1935 amendment, and (2) to insure the remainder interest in the decedent's grandchildren.

Petitioner did not include in decedent's gross estate the value of the trust property.

In his notice of deficiency, respondent determined that an amount of $503,878.26 representing the net asset value of the trust property on the date of decedent's death is includable in decedent's gross estate pursuant to section 2041(a)(1)(B). The reason given by respondent for such inclusion was that decedent, by amending the trust, exercised a general power of appointment created on or before October 21, 1942, by a disposition which was of such a nature that if it were a transfer of property owned by decedent, such property would be includable in decedent's gross estate under sections 2035 to 2038, inclusive.

OPINION

The parties agree that the provisions of Article III of the trust instrument of December 31, 1927, granting decedent the power to alter or amend the trust in whole or in part, were the equivalent of a general power of appointment within the meaning of section 2041(a). Furthermore, it is clear that the power of appointment in issue, if exercised at all, was done so by inter vivos instrument. Thus, the issue presented here is whether the corpus of the trust is includable in decedent's gross estate under the provisions of section 2041(a)(1) ; [3] and, accordingly, the questions for adjudication are (1) whether decedent "exercised" her general power of appointment within the meaning of section 2041(a), and (2) if so, whether such exercise was by a disposition of such nature that, if it were a transfer of property owned by decedent, such property would be included in decedent's gross estate under sections 2036 and 2038. Both questions must be answered in the affirmative before the appointive property can be included in the donee's gross estate.

By way of background, the facts in the instant case are spread over three periods in the development of Federal estate tax law on powers of appointment:

---

[3] SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

(1) POWERS OF APPOINTMENT CREATED ON OR BEFORE OCTOBER 21, 1942.—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

\* \* \* \* \* \* \*

(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive ;

but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—

(i) such partial release occurred before November 1, 1951, \* \* \*

(1) *Pre-1942 Law.*[4]—Prior to October 21, 1942, property subject to a general power of appointment was not included in the gross estate and, hence, was not taxable unless the power was exercised and the appointive property passed. Section 811(f) of the Internal Revenue Code of 1939.

(2) *1942 Law.*[5]—Estate tax consequences pertaining to donees of powers of appointment were radically changed by amendments to section 811(f) of the 1939 Code provided in the Revenue Act of 1942, 56 Stat. 952. In the 1942 amendment mere possession of a power of appointment, regardless of exercise or whether property "passed," subjected the appointive property to tax unless such power theretofore created was released prior to July 1, 1943.[6] Section 403(a)(3) of the Revenue Act of 1942, as amended. The 1942 Revenue Act, however, defined "power of appointment" to exclude, *inter alia*, a power to appoint within a class consisting, generally, of members and descendants of the donee's immediate family, and members and immediate descendants of the donor's family (excluding decedent). In addition, it was clear that a donee of a power of appointment could convert such power into a limited power and neither the existence, exercise, nor release of the limited power would result in gift or estate tax consequences. Sec. 81.24(3), Regs. 105.

(3) *1951 Powers of Appointment Act.*[7]—Under the Powers of Appointment Act of 1951, 65 Stat. 91, the law with respect to powers of appointment created prior to the Revenue Act of 1942 was substantially the same as that which existed prior to 1942.[8] Under the 1951 Powers of Appointment Act only the exercise of a general power of appointment created on or before October 21, 1942,[9] was taxable, provided that such exercise effectuated a disposition of a proscribed nature. The 1951 Powers of Appointment Act further provided that where a preexisting general power of appointment is partially released before November 1, 1951, so that it is no longer a general power of appointment,[10] its subsequent exercise would not be deemed an "exercise" of a general power for Federal estate and gift taxation. The provisions of the 1954 Code are substantially unchanged from those contained in the 1951 Powers of Appointment Act.

We shall first address ourselves to the question of whether decedent exercised her power.

---

[4] The original trust instrument was executed by Manuel H. Lombard in 1927.

[5] Amendments to the trust were executed by decedent in 1946.

[6] The date by which a nontaxable release could be accomplished was extended annually by successive Acts of Congress until June 30, 1951.

[7] Decedent died in 1960.

[8] The requirement of "passing," however, was eliminated.

[9] A general power as defined in the 1951 Powers of Appointment Act is one exercisable in favor of the donee, his creditors, or his estate.

[10] A power not exercisable in favor of the donee, his creditors, or his estate.

It is respondent's contention with respect to this first question that, in amending the trust instrument, decedent effected an exercise of her general power of appointment within the meaning of section 2041(a). Respondent's argument may be summarized as follows: The 1951 Powers of Appointment Act was effective as if enacted on October 21, 1942; Treasury regulations thereafter adopted and extant at the time of decedent's death provided that if, at the time of relinquishment of a general power, a power was exercised in such a manner as to result in any change in the beneficial interests in the property, such relinquishment is an exercise and not a release of the power, sec. 20.2041-2(d), Estate Tax Regs.; and since decedent exercised her general power to change the beneficial interests in the property and thereafter released said general power, her actions form the basis of an exercise under section 2041(a) and under the Treasury's regulations pursuant thereto.

Petitioner argues that although the actions of decedent in shifting the beneficial interests among her issue and spouses of issue in 1935 and again in 1946, coupled with her release of the power in the latter year, may be regarded as an exercise of a general power, the exercise was the practical equivalent of a partial release followed by the exercise of an exempt special power. Therefore, it contends, the value of the trust corpus should be excluded from decedent's gross estate under the provisions of section 2041(a)(1)(B)(i) relating to a partial release executed prior to November 1, 1951.

The issue in this first argument is not simply whether there was an "exercise" as opposed to a "release" of a power for it is clear that there was an exercise of a power here. The controversy really pivots upon whether decedent's actions in 1946 can be regarded as coming within the partial release provisions of section 2041(a)(1).[11]

There can be no question that every object which decedent sought to achieve and did achieve by her 1946 amendments could have been carried out without estate tax consequences under section 2041(a)(1) if decedent had first reduced her general power to a limited or special power and thereafter exercised the resulting special power. Had decedent in 1946 amended the trust instrument to limit her general power to one solely in favor of her issue and spouses of her issue, such an amendment would have constituted the reduction of a general power to a tax-free special power. Immediately thereafter, decedent could

---

[11] The main effect of decedent's amendment to the trust in 1935 was essentially precatory in nature. It did not reduce the beneficial interests which Katharine Lombard Groves and Laurence M. Lombard held in trust. *At all times after the death of decedent, said Katharine and Laurence could, upon request to the trustees, receive all of her or his share, respectively, of the trust corpus and all accumulated income thereon, free and clear.* Such amendment, failing as it did to shift in any material way the economic interests of trust beneficiaries, was not, consequently, an exercise of decedent's power of appointment for tax purposes. It was only in 1946 that decedent, by amendment to the trust pursuant to her power, exercised said power by actually reducing the interests of said Katharine and Laurence in the trust and establishing for the first time beneficial interests in her grandchildren.

have exercised her then special power to effect the very same changes which she actually made in 1946. This latter action would have constituted simply the nontaxable exercise of a limited power of appointment.

But respondent argues in essence that we should disregard the fact that decedent's actions were precisely the substantive equivalent of a reduction of a general power to a special power followed by the exercise of that exempt special power. Respondent contends that the controlling consideration should be merely that in form decedent acted under her general power to effect changes in the beneficial interests in the trust and subsequently confirmed this exercise by an irrevocable surrender of her powers.

Respondent is correct in describing the form of the transaction. However, this Court is not convinced that in interpreting the partial release provisions of section 2041(a), form rather than substance should control nor do we believe that Congress intended us to reach a result so unresponsive to the underlying realities of the matter at hand. Cf. *Emery v. United States*, 153 F. Supp. 248 (D. Mass. 1957). The object of the statute in question was not directed at a particular order of procedure nor would it be served by requiring a rigid order of procedure where the exercise and release are simultaneous. *Emery v. United States, supra*. The statutory purpose of the partial release provisions in section 2041(a)(1)(B) was to provide a tax-free shelter for donees of powers who disabled themselves from exercising a power for the economic benefit of other than those in the exempt class. Cf. *Emery v. United States, supra*. This was the precise object decedent contemplated and accomplished. None of the amendments to the trust were for the benefit of decedent or anyone else outside of the exempt class—all of the amendments were exercises in favor of issue and spouses of issue.

The quintessential feature of the partial release provisions under section 2041(a)(1)(B) is the requirement that a general power be reduced to a special power prior to November 1, 1951. The subsequent exercise by a donee of the resulting special power has no significance taxwise since the appointive property is not taxable in the donee's estate irrespective of (1) whether the special power is exercised before or after 1951 or (2) whether the special power is exercised at all. The appointive property is excluded from the gross estate on the sole basis that a partial release had occurred prior to November 1, 1951. We can see no substantive difference between (1) the exercise of a general power in favor of the exempt class followed almost immediately by an absolute release of the power and (2) the reduction of a general power to a limited power. In both cases the donee is absolutely disabled from exercising a power in favor of any persons or entities other than those in the exempt class. Thus, it would be unrealistic to distinguish

for tax purposes between a partial release which occurs prior to November 1, 1951, and an exhaustive exercise of a general power in favor of the exempt class, such as we have here, also occurring prior to November 1, 1951, since both equally attain the statutory object of limiting a general power for the benefit of the exempt class alone.

A question similar to that presented herein was raised in *Emery* v. *United States, supra*, which involved an analogous factual situation in the gift tax area. There the taxpayer's husband set up five irrevocable trusts in 1937 which were identical except for the naming of a different child of the donor, with that child's spouse and issue as beneficiaries. The taxpayer was to receive $300 monthly from each trust, payable first out of income and thereafter out of corpus, if necessary, and the remainder of each trust was to be distributed between the donor's issue and spouses of issue and charity. Each trust gave taxpayer full power to alter, amend, or revoke the trust. In 1944, taxpayer exercised her power to effectuate the following changes:

(1) Taxpayer's right to $300 was to be payable out of corpus "in the sole discretion of the trustee."

(2) The terms of the remainder interest of taxpayer's children were modified.

(3) Taxpayer's power was narrowed to a power of appointment in favor of charities.

In 1949 taxpayer released her remaining power to appoint in favor of charities, which action effectively left her without any further power to alter, amend, or revoke any of the five trusts.

Section 452(a) of the 1942 Revenue Act added section 1000(c) to the 1939 Code, imposing a gift tax upon the donee's inter vivos exercise or release of any power of appointment except one in favor of the donee's immediate family or that of the donor of the power or to charity.[12] However, section 452(c) of the same act provided: "A release of a power to appoint before January 1, 1943, shall not be deemed a transfer of property by the individual possessing such power." The last date by which a nontaxable release could be made was extended in 10 successive annual acts of Congress to cover the period up to 1951.

---

[12] SEC. 1000. IMPOSITION OF TAX.

(c) POWERS OF APPOINTMENT.—An exercise or release of a power of appointment shall be deemed a transfer of property by the individual possessing such power. For the purposes of this subsection the term "power of appointment" means any power to appoint exercisable by an individual either alone or in conjunction with any person, except—

(1) a power to appoint within a class which does not include any others than the spouse of such individual, spouse of the creator of the power, descendants of such individual or his spouse, descendants (other than such individual) of the creator of the power or his spouse, spouses of such descendants, donees described in section 1004(a)(2), and donees described in section 1004(b). As used in this paragraph, the term "descendant" includes adopted and illegitimate descendants, and the term "spouse" includes former spouse * * *

Section 86.2(b), Regs. 108,[13] provided that a nontaxable release of a power, as described in section 452(c) of the 1942 Revenue Act, might take the form of reducing a general power to a special power of the type exempted by section 1000(c)(1) of the 1939 Code.[14]

The Government in *Emery* v. *United States, supra,* argued that the controlling consideration was that the taxpayer in form acted under her general power to alter the economic rights of beneficiaries and to reduce the scope of her future authority to that of the holder of a special power to benefit persons within the exempt class. In other words, the Government contended that the taxpayer *exercised* her general power and did not merely release it.

Judge Wyzanski framed the issue in *Emery* v. *United States,* as follows:

The controversy at bar turns on whether since the taxpayer in 1944 simultaneously and in one document, called an amendment (a) reduced her general power to a special power and (b) altered the beneficial interests under the trusts, she can be regarded as having made that sort of partial release which is valid under § 452(c)(1) of the Revenue Act of 1942, as amended and continued by subsequent statutes in each of the ten following years.

Judge Wyzanski noted that the effect of the taxpayer's actions was to reduce a general power to a special power and exercise that special power. He went on to say that since—

The statutory object, emphasized by many successive sessions of Congress, was to protect from taxation a donee of a power who disabled herself from exercising a power for the economic benefit of others than those in the exempted class. * * * this object will be frustrated if the taxpayer is denied an exemption merely because * * * [she did not follow a particular order of procedure].

The District Court, therefore, concluded that the taxpayer did not make a taxable gift in 1949 or in 1944. In effect, Judge Wyzanski concluded that the regulations did not spell out the only means by which a nontaxable release could be brought about under the 1942 Revenue Act. We are convinced that *Emery* v. *United States, supra,* is a correct interpretation of the law as it existed prior to the Powers of Appointment Act of 1951.

The very question presented herein has already been considered in *Kynett* v. *United States,* 201 F. Supp. 609 (E.D. Pa. 1962). There the decedent was the life beneficiary of a trust created by her husband in 1934. The decedent had an absolute right to alter, amend, or revoke the trust at any time. In default of appointment by the decedent, the

---

[13] Sec. 86.2 TRANSFERS REACHED.

(b) *Transfers under power of appointment.*—* * *

The reduction in scope of a power of appointment, as defined in section 1000(c), to an excepted power under section 1000(c)(1) or (2), which is not a power of appointment as thus defined, constitutes the release of the power of appointment.

[14] Thus, the gift tax provisions on powers of appointment under the 1939 Code as amended by the 1942 Revenue Act prior to 1951 and the regulations relative thereto were virtually identical to the estate tax provisions and regulations pertaining to powers of appointment under the 1939 Code as amended by the same Act. See p. 315, *supra.*

trust corpus was to be held for the benefit of the decedent's daughter and more remote issue. In 1942 the decedent amended the original trust instrument (1) by making certain changes in beneficial interest which were not for her own benefit or anyone else's outside the exempt class and (2) by making the trust instrument irrevocable. Both the substance of her actions and the procedure she adopted were, for all purposes relevant hereto, substantially identical with the actions and procedure adopted by Anna Lombard in 1946. After the decedent's death in 1954, the Commissioner attempted to include the value of the trust corpus in the decedent's gross estate. The District Court held otherwise. In so holding it stated: "Decedent's actions * * * should be tested by the spirit and substance of what Congress seemed so clearly to intend. * * *" The Court went on to add: "We think it equitable and proper to judge Decedent by the substance of her actions rather than on the basis of a procedure finally adopted some nine years later [the Powers of Appointment Act of 1951]."

Respondent relies upon *Gartland's Estate* v. *Commissioner*, 293 F. 2d 575 (C.A. 7, 1961), affirming 34 T.C. 867 (1960), certiorari denied 368 U.S. 954 (1962). There the decedent's father in 1929 created a trust providing for the payment of income for life to the decedent in the sole discretion of the trustee, and after the decedent's death to the decedent's spouse or children. The decedent was also given a power to amend or terminate the trust. After amending the trust in 1931 and 1938 to require that the entire income be paid to him for life, the decedent executed in 1945 a document surrendering his power over the trust. This Court determined that the release of the power after the previous amendment constituted an exercise of the power within the meaning of the statute and that the power exercised was a general power. For this reason and because the son had a right to income from the trust, the value of the trust corpus was held to be includable in the son's gross estate under section 2041.

It is obvious that none of the factors upon which the courts in the *Emery* and *Kynett* cases relied were present in the *Gartland's Estate* case. The decedent therein exercised his power for his own benefit. It was, therefore, not open to argument in *Gartland's Estate* that the decedent had performed a substantively permissible action. His actions were, in substance, taxable ones. Therefore, *Gartland's Estate* is not controlling herein.

Respondent's reliance on section 20.2041-2(d), Estate Tax Regs., is misplaced; for the reasons stated above, we do not believe that its application is appropriate under the particular circumstances involved herein.

Accordingly, we hold that decedent executed a nontaxable exercise of her power of appointment in 1946 and, therefore, the value of the

trust corpus is not includable in her gross estate.[15]  We hold for petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[15] Since we have determined that decedent's exercise was nontaxable, we need not reach the question of whether such exercise was by a disposition of such nature that if it were a transfer of property owned by decedent, such property would be included in decedent's gross estate under secs. 2035 to 2038 inclusive.

